Charles E. PRENTICE and Jane G. Prentice, husband and wife on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,†

v.

TITLE INSURANCE COMPANY OF MINNESOTA, Chicago Title Insurance Company, Stewart Title Guaranty Company, Security Union Title Insurance Company, f/k/a Safeco Title Insurance Company, Lawyers Title Insurance Corporation, Ticor Title Insurance Company, f/k/a Pioneer National Title Insurance, First American Title Insurance Company of the Midwest, f/k/a St. Paul Title Insurance Corporation, American Title Insurance Company, Commonwealth Land Insurance Insurance Company, TRW Title Insurance Company, f/k/a Insured Title, Incorporated, National Attorney's Title Insurance Company, Title USA Insurance Corporation of New York, f/k/a U.S. Life Title Insurance Company of New York, Allan F. Montezan, as an individual and in his representative capacity on behalf of AM Title Insurance Company, Richard F. Tyson, as an individual and in his representative capacity on behalf of AM Title Insurance Company, Charles B. Schiereck, as an individual and in his representative capacity on behalf of Chicago Title Insurance Company, Jack Oliver, as an individual and in his representative capacity on behalf of Chicago Title Insurance Company, Jack Oliver, as an individual and in his representative capacity on behalf of, Commonwealth Lan Title Insurance Company, Duane H. Wunsch, as an

---

†Motion for reconsideration filed June 25, 1993.

individual and in his representative capacity on behalf of Associate Title Counsel Commonwealth Land Title, Insurance Company, Donald Grabski, as an individual and in his representative capacity on behalf of Lawyers Title Insurance Corporation, Richard Stopczynski, as an individual and in his representative capacity on behalf of Lawyers Title Insurance Corporation, Philip M. Larkin, as an individual and in his representative capacity on behalf of Ticor Title Insurance Company and Harvey Plollock, as an individual and in his representative capacity on behalf of Title Insurance Company of Minnesota, Defendants-Respondents.

Supreme Court

*Nos. 91–0402, 91–1580. Oral argument February 1, 1993.—Decided June 9, 1993.*

(Also reported in 500 N.W.2d 658.)

715

716

717

For the plaintiffs-appellants there were briefs (court of appeals and supreme court) by *James M. Clabault* and *Law Offices of James M. Clabault,* Milwaukee, *Jean Engstrom Jones* and *Law Offices of Jean Engstrom Jones,* St. Louis, MO, *David W. Brown* and *Knopf & Brown,* Washington, D.C., *Randolph E. House* and *Randolph E. House* and *Law Offices of Randolph E. House,* Milwaukee and *Peter Carstensen,* Professor of Law, University of Wisconsin and oral argument by *Mr. Clabault.*

For the defendants-respondents there were briefs (court of appeals and supreme court) by *Michael Fischer, James T. McKeown* and *Foley & Lardner,* Milwaukee, *William J. Mulligan* and *Davis & Kuelthau, S.C.,* Milwaukee, *John F. Graybeal, Robert H. Tiller* and *Parker, Poe, Adams & Bernstein,* Raleigh, NC, *John C. Christie, Jr., Patrick J. Roach* and *Bell, Boyd & Lloyd,* Washington, D.C., *David M. Foster* and *Fulbright & Jaworski,* Washington, D.C., *Frank D. Tatum, Jr., Paul J. Laveroni, John F. Young* and *Cooley, Godward, Castro, Huddleston & Tatum,* San Francisco, CA and *Leonard G. Leverson* and *Kravit, Gass & Weber,*

Milwaukee and oral argument by *Mr. Mulligan, Mr. Graybeal* and *Mr. Fischer.*

Amicus Curiae brief was filed (court of appeals) by *Kevin J. O'Connor,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

DAY, J.   This is an appeal from a judgment of the circuit court for Milwaukee County, Honorable John E. McCormick. This appeal is before us on certification from the court of appeals pursuant to sec. 809.61, Stats.

In this class action suit, the plaintiffs allege that the defendants, through their participation in the Wisconsin Title Insurance Rate Service Organization (WTIRSO), violated sec. 625.33, Stats.[1] and sec. 133.03, Stats.[2] by agreeing to fix the prices of title insurance and related services. The question presented is whether the filed rate doctrine[3] precludes the plaintiffs' rate-related suit for damages even if the

---

[1] **625.33   Binding agreements by insurers.** No insurer shall assume any obligation to any person other than a policy-holder or other companies under common control to use or adhere to certain rates or rules, and no other person shall impose any penalty or other adverse consequences for failure of an insurer to adhere to certain rates or rules.

[2] Section 133.03, Stats. provides in pertinent part:

    **133.03   Unlawful contracts; conspiracies.** (1) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal.

[3] Under the filed rate doctrine, also known as the filed tariff doctrine, the legal rights of a regulated entity and its customers in respect to a rate are measured solely by the filed rate. *See Keogh v. Chicago & Northwestern Railway Co.,* 260 U.S. 156, 163 (1922).

allegations are true. We hold that the filed rate doctrine shields the defendants from liability.

The defendants include twelve title insurance companies and several of their employees. Each title insurance company was a member of WTIRSO, a licensed title insurance rating bureau authorized by sec. 625.15, Stats.[4] to file joint rates on behalf of its members.

The plaintiff class consists of all persons who, during the period 1971 through at least 1984, purchased title insurance or related services from one or more of the defendants. The plaintiffs allege that the defendants and WTIRSO engaged in a conspiracy to unreasonably restrain trade, causing the plaintiffs to pay substantially higher prices for title insurance and related services than they would have had to pay in the absence of the alleged conspiracy. The plaintiffs seek treble damages under sec. 133.18, Stats.[5]

The defendants moved to dismiss the complaint on three separate grounds: (1) the filed rate doctrine; (2) the statute of limitation; and (3) an implied exemption from the Wisconsin antitrust laws. Several defendants,

---

[4] Section 625.15(2), Stats. provides:

(2) **Rate Filing.** An insurer may discharge its obligation under s. 625.13(1) by giving notice to the commissioner that it uses rates and supplementary rate information prepared by a designated rate service organization, with such information about modifications thereof as is necessary fully to inform the commissioner. The insurer's rates and supplementary rate information shall be those filed from time to time by the rate service organization, including any amendments thereto as filed, subject, however, to the modifications filed by the insurer.

[5] Section 133.18, Stats. provides in pertinent part:

**133.18 Treble damages; statute of limitations. (1)** (a) Except as provided under par. (b), any person injured, directly or indirectly, by reason of anything prohibited in this chapter may sue therefore and shall recover threefold the damages sustained . . . .

who were previously defendants in an antitrust suit which was dismissed pursuant to a settlement approved by the federal district court in the Eastern District of Pennsylvania, also moved to dismiss on the basis of *res judicata.* While the circuit court dismissed some defendants on the basis of *res judicata,* the circuit court dismissed all defendants on the basis of the filed rate doctrine. The circuit court specifically reserved judgment on the implied exemption and statute of limitation issues.

The plaintiffs appealed and this court accepted certification from the court of appeals. We affirm the decision of the circuit court on the basis of the filed rate doctrine. Thus, we need not discuss any other issue.

■

The question of whether the filed rate doctrine shields the defendants from liability is a question of law. This court decides questions of law independently and without deference to the reasoning of the lower court. *Pulsfus Farms v. Town of Leeds,* 149 Wis. 2d 797, 803–804, 440 N.W.2d 329 (1989).

For nearly one hundred years, the United States Supreme Court has held that the filed rate doctrine prohibits a plaintiff from claiming a lower rate than the one filed by a regulated entity with the appropriate regulatory agency because the filed rate alone governs the relationship between the parties. *See Texas & Pacific Railway Co. v. Mugg,* 202 U.S. 242 (1906); *Louisville & Nashville Railroad Co. v. Maxwell,* 237 U.S. 94 (1915). The Court reasoned that allowing a state court to award damages based on a hypothetical rate lower than the filed rate would undermine the regulatory scheme because a plaintiff could obtain greater relief from the court than from the regulatory agency. *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 579

(1981). The filed rate doctrine "has been extended across the spectrum of regulated utilities." *Id.* at 577.

The United States Supreme Court first applied the filed rate doctrine to an antitrust claim in *Keogh v. Chicago & N.W. Railway Co.*, 260 U.S. 156, 163 (1922). In *Keogh*, the plaintiff alleged that the defendants, freight carriers, formed an association to eliminate competition in violation of the federal antitrust laws. Furthermore, the plaintiff alleged that the association set rates higher than it would have if competition had not been quashed. The plaintiff claimed the extent of this difference as damages. The defendants pointed out that every rate complained of had been duly filed and approved by the Interstate Commerce Commission before it was made effective.

The Court held that the filed rate doctrine barred the plaintiff's claim and the regulatory agency provided the plaintiff's sole source of relief. *Id.* at 162. The Court concluded that the regulatory agency provided the plaintiff a remedy and refused to provide an additional remedy under the antitrust laws. *Id.* The Court reasoned that the regulatory agency's approval had, in effect, established the lawfulness of the defendants' rates and the legal rights of the parties were measured solely by the filed rate. *Id.* at 163. The Court explained that an award under the antitrust laws would undermine the regulatory scheme by acting as a rebate available only to the plaintiff. *Id.* Furthermore, The Court was troubled by the fact that the plaintiff, in addition to providing that the defendant would have maintained a lower rate in the absence of the illegal conspiracy, would have to prove that the regulatory agency would have approved the hypothetical lower rate. *Id.* at 163–64.

Although this case presents the first opportunity for this court to follow the rule announced in *Keogh* and apply the filed rate doctrine to an antitrust claim, this court has applied the filed rate doctrine in different contexts since 1911. *See City of Manitowoc v. Manitowoc & Northern Traction Co.,* 145 Wis. 13, 129 N.W. 925 (1911); *Kilbourn City v. Southern Wisconsin Power Co.,* 149 Wis. 168, 135 N.W. 499 (1912); *Oconto Electric Co. v. Peoples Land & Mfg. Co.,* 165 Wis. 467, 161 N.W. 789 (1917). This court, in *Manitowoc,* held that a rate filed with and found reasonable by the railroad commission becomes the lawful rate and supersedes any contractual rate that differs from the filed rate. *Manitowoc,* 145 Wis. at 30. In *Kilbourn City,* this court held that parties dealing with public-service corporations must pay the filed rate for the services performed and stated that "[a]ll subterfuges whereby one consumer is called upon to pay a greater or a lesser rate than that prescribed in the published schedule of charges . . . are condemned." *Kilbourn City,* 149 Wis. at 181. Similarly, in *Oconto,* this court stated that a rate filed with the railroad commission becomes "presumptively reasonable and enforceable until a different rate is established in place thereof by the railroad commission pursuant to law." *Oconto,* 165 Wis. at 485.

This court applied the filed rate doctrine in *Chicago & N.W. Transportation Co. v. Thoreson Food Products, Inc.,* 71 Wis. 2d 143, 238 N.W.2d 69 (1976). In *Thoreson,* the plaintiff, a freight carrier, allegedly damaged some of the defendant's freight. After the next shipment, the defendant sent the plaintiff a check for an amount which represented the filed rate minus the claimed damages from the previous shipment. The check bore a notation stating "in settlement of the above account." The plaintiff cashed the check and

brought suit to collect the full amount of the filed rate. The defendant relied on the doctrine of accord and satisfaction. This court, however, did not allow the defense of accord and satisfaction because the filed rate was binding on both parties and any agreement, implied or express, by the carrier to offset damage claims against freight charges was rendered null and void as a deviation from the filed rate. *Id.* at 147–48.

While this court has applied the filed rate doctrine on numerous occasions, plaintiffs cite no case in which this court refused to apply the doctrine. Additionally, "[w]e have stated many times that the construction of sec. 133.01(1) is controlled by federal decisions under the Sherman Act." *State v. Waste Management of Wisconsin, Inc.,* 81 Wis. 2d 555, 569, 261 N.W.2d 147 (1977). The United States Supreme Court recently examined and expressly reaffirmed the holding in *Keogh. Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409 (1986). This court's policy of conforming our antitrust decisions to those of the United States Supreme Court, coupled with this court's history of consistently applying the filed rate doctrine, leads us to adopt the reasoning of the United States Supreme Court's decision in *Keogh.*

The plaintiffs contend that *Keogh* does not apply to the present case. Section 625.13, Stats. mandates that insurers file a rate with the Commissioner of Insurance within thirty days after the rate becomes effective. The plaintiffs contrast this system with the system in *Keogh* where rates were filed and approved before use. Relying on this distinction, the plaintiffs claim that *Keogh* applies only where the regulatory scheme mandates filing and approval before use and does not apply where the rates may be used before filing.

We conclude, however, that the distinction between "file before use" and "use before file" schemes does not render *Keogh* inapplicable to the present case. In *Square D,* the United States Supreme Court refused to limit *Keogh* to cases where rates had been investigated and approved before use. *Square D,* 476 U.S. at 417. Under *Keogh,* as interpreted by *Square D,* the existence of a regulatory remedy bars a private rate-related suit for damages under the antitrust laws regardless of whether the regulatory body approved the rates before or after the rates became effective.

Like the regulatory scheme in *Keogh,* the Wisconsin Insurance Code provides a regulatory remedy which bars a private rate-related suit for damages. In 1969, the Legislature revised the Insurance Code by replacing a system under which rates were not effective until approved with the current system which allows insurers to set rates as long as they file the rates within thirty days. The plaintiffs contend that the goal of this revision was to promote independent competition among the insurers and limit regulation. The Committee Comments accompanying the revision, however, state that "because competition is not perfect, it cannot be relied on completely." 1969 Wis. Laws Ch. 144 at 257. Furthermore, the Legislature warned that "it does not seem advisable to completely abandon all rate regulation. Rates must be filed after they have begun to be used, and **the commissioner's power to intervene decisively is clearly preserved."** *Id.* at 255 (emphasis added).

Although the Legislature intended to promote competition among insurers, the 1969 revision did not eviscerate the power of the Insurance Commissioner. For example, sec. 601.41, Stats. grants the Commis-

sioner the broad authority to administer and enforce Chapter 625. Section 625.04, Stats. authorizes the Commissioner to create exemptions. Section 625.16, Stats. allows the Commissioner to establish reasonable minimum standards for loss ratios of medicare supplement policies, medicare replacement policies and long-term care insurance policies. Sections 625.21 and 625.23,[6] Stats. grant the Commissioner the power to require that certain rates be filed and approved before they are made effective.

Most importantly, sec. 625.22, Stats. grants the Commissioner the power to disapprove any rate not in accordance with sec. 625.11, Stats. Section 625.11, Stats. states that "[r]ates shall not be excessive, inadequate or unfairly discriminatory, **nor shall an insurer charge any rate which if continued will have or tend to have the effect of destroying competition or creating a monopoly.**" (emphasis added). Read together, secs. 625.22 and 625.11, Stats. provide that the Insurance Commissioner shall disapprove any rate which will destroy competition. Thus, Chapter 625 provides a remedy when an insurer restrains trade in violation of sec. 133.03, Stats.

Under the filed rate doctrine as enunciated in *Keogh,* the availability of such a regulatory remedy

---

[6] Although the plaintiffs claim that a series of rate changes could result in a situation where the rate on file is never the rate being charged, the Committee Comments to sec. 625.23, Stats. explain that "[o]ne purpose of this section is to prevent 'flash filings' to circumvent the 'use-and-file' provisions of s. 625.13." 1969 Wis. Laws Ch. 144 at 262.

bars a private rate-related suit for damages.[7] To hold otherwise would undermine the regulatory scheme by allowing courts to award damages based on a rate which was never filed with the Insurance Commissioner. If courts were authorized to determine whether a hypothetical rate would have been approved by the Insurance Commissioner, we would place insurers in a procrustean bed where one rate must conform to the requirements of both the Insurance Commissioner and a trier of fact. In order to uphold the regulatory scheme enacted by the Legislature, we conclude that the Insurance Commissioner serves as the plaintiffs' sole source of relief.

The Committee Comments to the 1969 revision of the Insurance Code support this conclusion. The Comments expressly state that "[r]ate regulation is not a place for formal, quasi-litigious proceedings. The process is a very technical one better suited to less formal processes . . . . No one other than the insurer and the commissioner should have a formal place in rate procedures—i.e. should have 'standing.' It is the commissioner's job to protect the public and any remedies against him should not be built into the rate review procedure but should be more general and applicable to any malfeasance or nonfeasance in office." 1969 Wis. Laws Ch. 144 at 262.

We disagree with the plaintiffs' contention that the United States Supreme Court's recent decision in *FTC v. Ticor Title Insurance Co.*, 119 L. Ed. 2d 410 (1992) applies to this case. In *Ticor,* The Court decided

---

[7] We note that the filed rate doctrine does not provide absolute immunity from the antitrust laws. For example, the filed rate doctrine does not protect against suits by the government or private suits which do not seek rate-related damages.

whether several title insurers operating in Wisconsin were immune from federal antitrust liability under the state action doctrine. The state action doctrine shields conduct that would otherwise be illegal from antitrust liability if: (1) the challenged restraint is clearly articulated and affirmatively expressed as a state policy; and (2) the state actively supervises the policy. *Id.* at 421–24. The Court found that the state action doctrine did not apply because the Wisconsin Insurance Commissioner did not actively supervise the rate-making procedure. This determination, however, does not change the fact that the Wisconsin Insurance Code provides the plaintiffs with a remedy for the violations alleged in the present case. As pointed out previously, the Insurance Commissioner, pursuant to secs. 625.11 and 625.22, Stats., must disapprove any rate which restrains trade. Thus, the *Ticor* decision is not relevant to the present case.

Finally, we acknowledge the plaintiffs' claims that WTIRSO operated in violation of the Insurance Code. These claims, even if true, do not alter our conclusion. The plaintiffs in *Square D* claimed that the defendants, members of the Niagara Frontier Tariff Bureau, Inc. (NFTB), did not comply with the terms of the bureau agreement and engaged in conduct that either was not or could not be approved by the regulatory agency. Specifically, the plaintiffs alleged that the defendants: (1) used a committee which was not authorized by the NFTB agreement to set rates and inhibit competition; (2) set and controlled NFTB rate levels without complying with the notice, publication, public hearing, and recordkeeping requirements of the NFTB agreement and ICC regulations; (3) planned threats, retaliation, and coercion against NFTB members to inhibit inde-

pendent actions; (4) used pressures, threats, and retaliation to interfere with independent action; and (5) filed tariffs with the ICC. Thus, the plaintiffs in *Square D,* who alleged violations of the ICC as well as the antitrust laws, are similar to the plaintiffs in the present case who claim violations of the Insurance Code as well as the antitrust laws. Nevertheless, the Court held that the filed rate doctrine shielded the defendants from treble damages liability under the antitrust laws. 476 U.S. at 417. In the case before us, the circuit court likewise properly dismissed the complaint, which seeks treble damages, on the basis of the filed rate doctrine.

*By The Court.*—The judgment of the circuit court is affirmed.

Justice STEINMETZ and Justice CECI did not participate in this opinion.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The filed tariff doctrine applies where the legal rights of a regulated entity and its customers in respect to a rate are measured solely by the filed rate. Maj. op. at 719, n.3, citing *Keogh v. Chicago & Northwestern Ry. Co.,* 260 U.S. 156, 163 (1922). The theory underlying the doctrine is that the lawfulness of the rates has been established by the filing and that no customers can claim that a rate has "injured" them "in their "business or property" within the meaning of the antitrust laws. *Square D Co. v. Niagara Tariff Bureau,* 476 U.S. 409, 416 (1985).

The cornerstones of rate regulation under the Wisconsin Insurance Code are competition and rate-setting by the insurers. Section 625.01(2)(c), Stats. 1991–92; Committee Comment, West's Wis. Stat. Ann.

ch 625 at 2 (1980). There is no active supervision by Wisconsin officials of title insurance rates. Rate filings are at most checked for mathematical accuracy. *FTC v. Ticor Title Insurance Co.,* — U.S. —, 119 L. Ed. 2d 410, 420 (1992). The remedies provided under the insurance code for rates declared excessive, inadequate or unfairly discriminatory are prospective only. Sections 625.11, 625.22, Stats. 1991–92.

I conclude that the system of title insurance rate regulation in this state does not constitute a sufficiently comprehensive or pervasive control of rates to ensure that only lawful rates are charged to consumers, and therefore the regulatory system does not implicate the filed tariff doctrine.