535 S.E.2d 642

**VIDEO GAMING CONSULTANTS, INC., Appellant,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Respondent.**

**No. 25177.**

Supreme Court of South Carolina.

Heard June 20, 2000.

Decided July 31, 2000.

H. Buck Cutts, of Surfside, for appellant.

General Counsel Harry T. Cooper, Jr., and Chief Counsel for Regulatory Litigation Nicholas P. Sipe, both of Columbia, for respondent.

MOORE, Justice:

Appellant Video Gaming Consultants, Inc. (Video Gaming), appeals the circuit court's decision holding S.C.Code Ann. § 12–21–2804(b) (Supp.1999) [1] constitutional. We reverse.

## FACTS

Video Gaming operates a video gaming business, Jackpot Video Games, in Garden City. On July 27, 1995, and September 25, 1995, respondent South Carolina Department of Revenue (DOR) issued citations to Video Gaming for violating § 12–21–2804(b).

This code section states: "No person who maintains a place or premises for the operation of machines licensed under Section 12–21–2720(A)(3) may advertise in any manner for the playing of the machines." [2] Video Gaming had displayed a large sign reading: "STOP HERE TRY OUR POKER VIDEO GAMES" and two signs stating "JACKPOT VIDEO GAMES." [3]

Video Gaming appealed to the Administrative Law Judge (ALJ) challenging the statute on the ground that it violates the First Amendment. The ALJ upheld the citations. Video Gaming appealed to the circuit court. The circuit court affirmed the ALJ.

## ISSUES

1) Does the ALJ have the authority to rule on the constitutionality of a statute?

---

1. This section was repealed by 1999 Act No. 125, Part I, § 8, effective July 1, 2000.

2. 27 S.C.Code Ann.Reg. 117–190.2 states:

 The Video Game Machines Act, found in Article 20, Chapter 21 of Title 12, states that no person who maintains a place or premises for the operation of video game machines as defined in Code Section 12–21–2772(5) may advertise in any manner for the playing of the machines. Therefore, any attempt to call attention to, or make known, to the general public that video game machines as defined in Code Section 12–21–2772(5) are available for play is advertising and is strictly prohibited by the statute.

3. The September violation was only for the two "Jackpot Video Games" signs.

2) Is the ban on advertising constitutional?

## DISCUSSION

### 1) ALJ's authority

 Initially, we address an issue which has appeared in several recent cases. The ALJ specifically stated he had the authority to declare a statute unconstitutional because an ALJ has the same authority as a circuit court judge.[4] However, we have ruled an ALJ should not rule on the constitutionality of statutes. *See Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000) (ALJs must leave question of statute's constitutionality to the courts). ALJs are an agency of the executive branch of government and must follow the law as written until its constitutionally is judicially determined; ALJs have no authority to pass upon the constitutionality of a statute or regulation. *See, e.g., Beaufort County Bd. of Educ. v. Lighthouse Charter Sch. Comm.*, 335 S.C. 230, 516 S.E.2d 655 (1999); *South Carolina Tax Comm'n v. South Carolina Tax Bd. of Review*, 278 S.C. 556, 299 S.E.2d 489 (1983). In the present case, the only issue raised is the constitutionality of a statute.

 Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. Plainly these purposes would not be served when the only issue is the validity of a statute. *See, e.g., Insurance Commissioner of Md. v. Equitable Life Assurance Soc.*, 339 Md. 596, 664 A.2d 862 (1995).

 Several cases from other jurisdictions have addressed this issue and have dispensed with the exhaustion requirement in certain situations. *See, e.g., Finnerty v. Cowen*, 508 F.2d 979 (2d Cir.1974); *Martinez v. Richardson*, 472

---

4. The ALJ cited § 1–23–630 (Supp.1999), which states: "Each of the law judges of the division has the same power at chambers or in open hearing as do circuit court judges, and to issue those remedial writs as are necessary to give effect to its jurisdiction."

F.2d 1121 (10th Cir.1973); *Marsh v. County Sch. Bd.*, 305 F.2d 94 (4th Cir.1962). In *Finnerty*, the court held for it to require exhaustion of administrative remedies would be both futile and unnecessary when the party sought judicial resolution of only a constitutional question that could not be adjudicated by the federal agency. As here, Video Gaming sought a determination that could not be made by an agency or ALJ. *See also Sch. Dist. of City of Saginaw v. United States Dept. of HEW*, 431 F.Supp. 147 (E.D.Mich.1977); *Plano v. Baker*, 504 F.2d 595 (2d Cir.1974). As a general rule, if the sole issue posed in a particular case is the constitutionality of a statute, a court may decide the case without waiting for an administrative ruling. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Thus, we hold if the only issue is a constitutional challenge to a statute or regulation, a party should seek a declaratory judgment from circuit court rather than going before an ALJ.

■■ We note the mere presence of a constitutional issue does not excuse the exhaustion requirement where there are other issues in controversy. The constitutional issues may be raised, but not ruled upon, in the administrative proceedings. *Sch. Dist. of City of Saginaw*, 431 F.Supp. 147, 154 (citing *Yakus v. United States*, 321 U.S. 414, 437, 64 S.Ct. 660, 88 L.Ed. 834 (1944)). However, practically speaking, *requiring* a party to raise an issue which cannot be ruled upon by an ALJ makes little sense. *See Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446 (Tenn.1995) (APA requires more flexible approach and party may raise constitutional challenge upon judicial review). Thus, we hold the issue need only be raised to and ruled upon by the circuit court for preservation for further review.

### 2) Constitutionality of ban

The circuit court held the ALJ had properly applied the test set forth in *Central Hudson*.[5] In *Central Hudson*, the United States Supreme Court held:

---

5. *Central Hudson Gas & Elect. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (setting forth the test for determining the constitutionality of regulations and restrictions on speech).

In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. at 2351. The circuit court also stated that this statute had been upheld under the *Central Hudson* analysis in *Reyelt et al. v. South Carolina Tax Comm'n,* Civil Action No. 6:93–1491–3 (D.S.C. July 5, 1994). However, this decision is not binding on this Court. *See Gentry v. Yonce,* 337 S.C. 1, 522 S.E.2d 137 (1999) (citing *Phillips v. Periodical Publishers' Serv. Bureau, Inc.,* 300 S.C. 444, 388 S.E.2d 787 (1989)). Furthermore, the *Reyelt* decision, the ALJ, and the circuit court all relied heavily upon the case of *Posadas,*[6] in which the Supreme Court deferred to the decision of the Puerto Rican legislature to ban advertising of casinos. In *Posadas,* Puerto Rico was permitted to ban casino gambling advertising aimed at its residents, while permitting advertising for other wagering games like cock fights. The Supreme Court has since disavowed its reasoning in *Posadas.* *See 44 Liquormart, Inc., v. Rhode Island,* 517 U.S. 484, 509, 116 S.Ct. 1495, 1511, 134 L.Ed.2d 711 (1996) ("we are now persuaded that *Posadas* erroneously performed the First Amendment analysis").

In *44 Liquormart,* licensed retailers of alcoholic beverages who had violated Rhode Island's statutory ban on liquor price advertising challenged the ban's constitutionality. The first statute prohibited a licensee from advertising in any manner whatsoever the price of any malt beverage, cordials, wine, or distilled liquor offered for sale in that state. The second statute applied to the Rhode Island news media and contained a categorical prohibition against the publication or broadcast of any advertisements, even those referring to sales in other

---

6. *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986).

states, that made reference to the price of any alcoholic beverage. Additionally, the retailers in *44 Liquormart* challenged regulations which provided that no placard or sign that is visible from the exterior of a package store may make any reference to the price of any alcoholic beverage. Rhode Island argued the ban promoted temperance. The Supreme Court held the challenged Rhode Island statutes and regulation abridged speech in violation of the First Amendment as made applicable to the States by the Due Process Clause of the Fourteenth Amendment.

In *44 Liquormart*, the Supreme Court concluded that "special care" should attend the review of such blanket bans, and it pointedly remarked that "in recent years this Court has not approved a blanket ban on commercial speech unless the expression itself was flawed in some way, either because it was deceptive or related to unlawful activity." 517 U.S. at 507, 116 S.Ct. at 1507 (quoting *Central Hudson*, 100 S.Ct. at 2351). When a State regulates commercial messages to protect consumers from misleading, deceptive, or aggressive sales practices, or requires the disclosure of beneficial consumer information, the purpose of its regulation is consistent with the reasons for according constitutional protection to commercial speech and therefore justifies less than strict review. However, when a State entirely prohibits the dissemination of truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair bargaining process, there is far less reason to depart from the rigorous review that the First Amendment generally demands. *Id.*

Sound reasons justify reviewing the latter type of commercial speech regulation more carefully. Most obviously, complete speech bans, unlike content-neutral restrictions on time, place, or manner of expression, are particularly dangerous because they all but foreclose alternative means of disseminating certain information. *Id.* The Court also held "[s]peech prohibitions of this type rarely survive constitutional review." 517 U.S. at 504, 116 S.Ct. at 1508.

Here, as the circuit court held, the first prong of *Central Hudson* is clearly met. The advertising is entitled to first amendment protection as it is commercial speech con-

cerning a legal activity and it is not misleading.[7] The second prong is whether the asserted governmental interest is substantial. If both inquiries yield positive answers, then, under *Central Hudson*, we must determine whether the regulation directly advances the governmental interest asserted, and lastly whether it is more extensive than is necessary to serve that interest. Stated another way: "[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree." *Greater New Orleans Broadcasting Ass'n v. United States*, 527 U.S. 173, 188, 119 S.Ct. 1923, 1932, 144 L.Ed.2d 161 (1999) (citing *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993)). The circuit court found the ban met the third and fourth prongs of *Central Hudson*. We disagree.

Minimizing gambling would certainly qualify as a substantial governmental interest. However, the DOR has not shown the ban would promote its goal of decreasing gambling activity. Under the third prong, the ban must advance the State's objective "to a material degree." *44 Liquormart*, 517 U.S. at 505, 116 S.Ct. at 1509. Here, the DOR argues and the circuit court found that the ban would prevent gambling and gambling addictions and all of the social ills implicated from addictive gambling (i.e. increased criminal activity and harm to families). However, the DOR has presented no evidence that the advertising ban would significantly reduce gambling. *44 Liquormart*, 517 U.S. at 506, 116 S.Ct. at 1510.

The DOR presented three experts. Two were experts on gambling and the third was an expert on advertising. Dr. Valerie Loranz testified that children are starting to gamble earlier because of watching their parents play the games,

---

7. The DOR concedes the signs in question concern lawful activity. The ALJ found the signs were misleading based upon the word "Jackpot." The DOR states in its brief that it does not waive the issue whether the signs are misleading. However, the DOR does not make any argument on the issue. Thus, the DOR has abandoned this issue. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting an issue that is not argued in the brief is deemed abandoned and precludes consideration on appeal); *see also Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999) (noting that conclusory arguments may be treated as abandoned); Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

advertising of lottery tickets as family entertainment, and their experiences with computers and other video games such as Pac Man—not because of the advertising of "playing" of video poker machines. The DOR contends the other experts testified as to the connection between gambling and societal costs. Again, there was no expert testimony on the connection between advertising "playing" of video games and increased gambling.[8] The circuit court also held that, "Video Gaming would not be contesting the ban unless it believed that advertising would increase gambling and machine use." Certainly, we cannot conclude that advertising increases gambling simply because a party is contesting the constitutionality of the ban.

After *44 Liquormart*, the fourth-prong or "reasonable fit" inquiry under *Central Hudson* has become a tougher standard for the State to satisfy. Little deference can be accorded to the State's legislative determination that a commercial speech restriction is no more onerous than necessary to serve the government's interests. *44 Liquormart*, 517 U.S. 484, 509, 116 S.Ct. 1495, 1511, 134 L.Ed.2d 711.

In *Greater New Orleans Broadcasting Ass'n, supra*, other media remained available, such as newspapers, magazines and billboards, and broadcast advertising of casinos, without reference to gambling, was permitted. The cases have repeatedly stated that government restrictions upon commercial speech may be no more broad or no more expansive than "necessary" to serve its substantial interests. *See, e.g., Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351. The Supreme Court has not insisted that there be no conceivable alternative, but only that the regulation not "burden substantially more speech than is necessary to further the government's legitimate interests." *Board of Trustees of the State University of N.Y. v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989).

The ALJ held the statute was not too restrictive because persons other than Video Gaming operators could advertise

---

8. Mr. Joseph Cook, one of the DOR's experts, testified that in his opinion publishing a business's name would not be "advertising." Mr. Cook made a distinction between "advertising" which is paid for by a business and "promotion" which he testified would be placing a sign with the business's name on the building.

the playing of the machines.[9] The circuit court agreed and, quoting *Reyelt*, stated that the Tourism Department or the Chamber of Commerce could advertise. In its brief, the DOR takes this analysis even further and contends video game operators can advertise "Games" and "Food"[10] and even "24 Hours" as long as the advertisements do not refer or call attention to the playing of games.[11] We fail to see the practical distinction between these supposedly legal examples of advertising and the ones for which Video Gaming was fined. All would in effect be advertising the games and, since the gaming machines were not being sold outright, the promotion would be, of course, for the "play" of the games. The implied assertion is that somehow a ban on advertising the "playing" of the games accomplishes the State's objective of not promoting gambling; but merely advertising "games" also promotes gambling.[12] We reiterate that the business Video Gaming was running was named "Jackpot Video Games." Thus, two of the signs were advertising the business's name and there was some discussion in the record about whether placing a sign with a business's name on it even qualifies as "advertising."[13]

---

9. He also stated that the person who maintains the premises could also advertise its business but not the playing of the machines. Arguably, Video Gaming had done just that—advertised its business which was named "Jackpot Video Games."

10. 27 S.C.Code Ann.Reg. 117–190.1 provides that a business cannot offer "food" as an inducement to influence a person to play video games. Further, S.C.Code Ann. 12–21–2804(E) states: "It is unlawful to operate machines licensed under Section 12–21–2720(A)(3) between the hours of midnight Saturday night and six o'clock a.m. Monday morning." Thus, this type of conduct would be illegal.

11. It appears that in 1995, the DOR agreed with Video Gaming that "Video Games" was not advertising violating the statute. Thus, the effect of the word "Jackpot" would have to be somehow be interpreted as referring to the playing of the games. Obviously, the DOR tied its hands when it agreed to the above and now it is stuck with the unappealing argument it makes.

12. We note the DOR did not fine Video Gaming for a violation of offering a special inducement, such as a jackpot.

13. The DOR stated at oral arguments the placing of a video gaming business's name and phone number in the white pages of the phone book would be a violation.

Further, the DOR also cannot satisfy the requirement that its restriction on speech is reasonable or no more extensive then necessary to meet the fourth prong because alternate forms of regulation and educational campaigns regarding the effects of gambling might prove effective. *44 Liquormart*, 517 U.S. at 507, 116 S.Ct. at 1510 (alternate regulations, educational campaigns, limiting per capita purchases, or increased taxation are all alternatives which could be more effective in tempering the use of alcohol).

Obviously, the DOR realizes that a complete or total ban on advertising would be unconstitutional and violate the fourth prong of the *Central Hudson* test. Thus, the DOR is trying to illustrate the reasonableness of the prohibition. In doing so, the DOR has shown that the ban does not accomplish their goal and thus, also does not meet the third prong of the *Central Hudson* test. In conclusion, we hold the statute does not meet the last two prongs in the *Central Hudson* test and thus the statute is unconstitutional.

**REVERSED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice JAMES W. JOHNSON, Jr., concur.