623 S.E.2d 387

Patricia L. EDGE, Miles Green, and all others similarly situated, Appellants/Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COM-PANY and all others similarly situated, and South Carolina Reinsurance Facility, Defendants,

of whom South Carolina Reinsurance Facility is the, Respondent,

and

State Farm Mutual Automobile Insurance Company is the, Respondent/Appellant.

No. 26078.

Supreme Court of South Carolina.

Heard June 14, 2005.

Decided Dec. 5, 2005.

512

A. Camden Lewis and Peter D. Protopapas, both of Lewis, Babcock & Hawkins, L.L.P., of Columbia;  Michael G. Sullivan, of Michael G. Sullivan, P.C., of Columbia;  and Richard A. Harpootlian, of Richard A. Harpootlian, P.A., Columbia, for Appellants/Respondents.

Thomas C. Salane, of Turner, Padget, Graham & Laney, P.A., of Columbia, for Respondent South Carolina Reinsurance Facility.

James C. Gray, Jr., B. Rush Smith, III, C. Mitchell Brown, and William C. Wood, Jr., all of Nelson, Mullins, Riley & Scarborough, of Columbia, for Respondent/Appellant State Farm Mutual Automobile Insurance Company.

Justice WALLER:

This is an appeal from the dismissal of several causes of action against Respondent/Appellant State Farm Mutual Automobile Insurance Company (State Farm) and all causes of action against Respondent South Carolina Reinsurance Facility (the Facility).  State Farm has cross-appealed the partial denial of its motion to dismiss.  We affirm in part and reverse in part.

## FACTS

In 1996, State Farm insured the plaintiffs, Patricia Edge and Miles Green.  Edge and Green's daughter, Shelly Green, were involved in separate automobile accidents.  Edge and Shelly were not cited and were found not to be at-fault by the police investigating the accidents.  The other driver in Edge's accident, Ann Shull, forfeited her bond and was adjudicated guilty of running a red light in October 1996.  Notwithstanding this, State Farm, determined Edge was at-fault.  In Shelly's accident, the other driver, Chris Whitner, was found guilty of two traffic violations while Shelly was not charged

with any violations. However, State Farm determined Shelly was at-fault.

After the accident, the plaintiffs' policies were ceded to the Facility.[1] As a result of State Farm's fault determination of the accidents, two merit ratings points were assigned to each plaintiff and their premiums increased. Edge's six-month premium beginning in October 1997 increased from $425.77 to $1,088.83, or approximately $660. Green's six-month premium increased from $386 to $1,700, or approximately $1,314.

Instead of paying the higher premium, Edge applied for insurance with Horace Mann Insurance. Horace Mann notified her that State Farm had reported the accident to the Comprehensive Underwriting Exchange and she would be assessed two surcharge points and her premiums would be substantially higher. Edge paid the increased premium for the Horace Mann policy for four days. Horace Mann later removed the surcharge, refunded the increase, and lowered the premium rate after Edge provided documentation that Shull had been convicted in connection with the accident. Green was billed for the higher premiums but subsequently the merit points were removed, and he never actually paid any increased premium.

The plaintiffs brought this action seeking a declaratory judgment and damages for breach of contract, breach of statute, and conspiracy against State Farm and the Facility. The circuit court denied State Farm's 12(b)(8) motion; granted the Facility's motion to dismiss; and in two separate orders, denied in part and granted in part State Farm's 12(b)(1) and (6) motion dismissing several causes of action.[2]

---

1. The "Facility is an unincorporated, nonprofit entity created by statute in 1974 to provide high-risk drivers with automobile insurance not available through the voluntary market." *Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 437, 511 S.E.2d 48, 50 n. 1 (1998). The Facility imposes recoupment charges on all drivers to recover its losses. The amount of the surcharge is based upon the individual's driving record. On March 1, 1999, the Facility stopped accepting new policies and will cease to operate in 2006. *Id.*

2. We note this action is being brought as a class action, but it has not yet been certified as such.

Basically, the issues in this case center around two underlying questions: 1) whether State Farm can unilaterally determine whether a driver is at-fault; and 2) whether State Farm's and the Facility's use of the facility rate was authorized and its calculation proper.

### Background

Base and Objective Standards Rates

In 1987, the General Assembly enacted legislation which provided for a two-tier rating system for automobile insurers to use which included a base rate and an objective standards rate.[3] The objective standards rate was 25% higher than the base rate. *See* S.C.Code Ann. § 38–73–455 (repealed by Act No. 154, § 31 eff. Mar. 1, 1999). An insurer's base rate was to be charged to all drivers unless the driver met one or more of the criteria or conditions set forth in S.C.Code Ann. § 38–73–625 (repealed by 1997 Act No. 154, § 31, eff. Mar. 1, 1999). One of the conditions was whether the driver has been at-fault in a prior accident. Section 38–73–455 listed several exceptions to this increase in premiums—one of which was when the other driver involved in an accident was convicted of a moving traffic violation. S.C.Code Ann. § 38–73–455(d). A driver meeting one of the objective standards of § 38–73–625 and not falling within an exception in § 38–73–455 was to be charged the objective standards rate. Furthermore, both the base and objective standards rates were subject to additional surcharges under the Uniform Merit Rating Plan.

### Uniform Merit Rating Plan

The Uniform Merit Rating Plan was established in 1976 by regulation to create a uniform system of automobile insurance discounts and surcharges based primarily on a driver's record. S.C.Code Reg. 69–13.1 (repealed by State Reg. Vol. 25, Issue No. 3, eff. Mar. 23, 2001). The regulation applied to all insurers writing automobile policies in South Carolina. Surcharge points were assessed based upon moving traffic violation convictions, accidents, and other indicators for the 36–month period prior to the inception of the policy. If there

---

**3.** In 1997, the General Assembly overhauled the automobile insurance system in South Carolina, and many of the statutes involved in this case were repealed—most effective March 1, 1999.

were no surcharge points, the driver was entitled to receive a 20% safe-driver's discount. One surcharge point, and the driver lost the safe driver discount. Two or more surcharge points increased the premium. If the policy was ceded (or reinsured) to the Facility and without a safe driver discount, the facility rate applied.

There were also recoupment fees assessed against every policyholder which allowed the Facility to recoup its operating losses. The recoupment fee is calculated based upon the number of surcharge points the driver has under the Merit Rating Plan. *See infra* n. 1.

### The Facility Rate

S.C.Code Ann. 38–73–1420 (2002) provides for the calculation of the facility rate. The facility rate is calculated by the Facility using two numbers: the expense and pure loss components. The pure loss component is derived from the pure loss component which was filed by the rating organization with the most subscribers or members. The expense component is derived from a filing made by the Facility based upon the expense data of its designated carriers. After the rating organization with the largest number of members files its pure loss component, and it has been approved, then the Facility files its expense component, the actual incurred expenses of the Facility. Once the expense component is approved by the Director of the Insurance Department, the two are added together to form the facility rate to be used by all designated carriers.

### ISSUES

1) Did the circuit court err in granting the Facility's motion to dismiss?
2) Did the circuit court err in denying in part and granting in part State Farm's motion to dismiss?

### DISCUSSION

Initially, we address the plaintiffs' argument that State Farm's cross-appeal should be dismissed because a denial of a motion to dismiss is not immediately appealable. While State Farm concedes this point, it contends the Court has jurisdic-

tion over its cross-appeal because of judicial economy. We agree.

An order that is not directly appealable may be considered if there is an appealable issue before the court. *Briggs v. Richardson,* 273 S.C. 376, 256 S.E.2d 544 (1979); *Cox v. Woodmen of World Ins. Co.,* 347 S.C. 460, 469, 556 S.E.2d 397, 402 (Ct.App.2001). Here, an order in this case which is appealable is before the Court and, in an effort to avoid another appeal in the future and potentially narrow the issues for trial (i.e. judicial economy), we will consider State Farm's cross-appeal.

In addressing the issues raised in this case, a threshold decision we must make is whether to adopt the filed rate doctrine. The filed rate doctrine was originally a federal preemption rule which provided that rates duly adopted by a regulatory agency are not subject to collateral attack in court. *See Mississippi Power & Light Co. v. Mississippi,* 487 U.S. 354, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988). *See also Hamm v. Pub. Serv. Comm'n,* 310 S.C. 13, 17, 425 S.E.2d 28, 30 (1993). "The filed rate doctrine stands for the proposition that because an administrative agency is vested with the authority to determine what rate is just and reasonable, courts should not adjudicate what a reasonable rate might be in a collateral lawsuit." *Amundson & Assocs. Art Studio v. Nat'l Council on Comp. Ins.,* 26 Kan.App.2d 489, 988 P.2d 1208, 1213 (1999). Many courts have held the rationale underlying the federal filed rate doctrine applies equally to regulations by state agencies. *See e.g. Wegoland, Ltd. v. NYNEX Corp.,* 27 F.3d 17, 20 (2nd Cir.1994). The filed rate doctrine bars only collateral attacks brought by private parties and not direct reviews in ratemaking cases or actions brought by a governmental agency. *Commonwealth v. Anthem Ins. Cos., Inc.,* 8 S.W.3d 48, 53–4 (Ky.Ct.App.1999).

Most courts have held the doctrine bars all actions brought by a private party. These courts reason that making a declaratory judgment or establishing and enforcing an injunction would inevitably require the court to determine the proper rate "to the same, if not greater, extent as would an attempt to fix damages based upon previously filed rates." *Hilling v. Northern States Power Co.,* 1990 WL 597044, *3

(D.Minn.1990). *See also H.J., Inc. v. Northwestern Bell Tel. Co.,* 954 F.2d 485, 490 (8th Cir.1992) (holding filed rate doctrine to be arguably inapplicable if the claim does not attack the amount of the rate filed, and does not require the court to "second guess" the rate-making agency); *Gulf States Utils. Co. v. Alabama Power Co.,* 824 F.2d 1465, 1472 (5th Cir.1987)(holding cause of action for fraudulent inducement is not barred by filed rate doctrine if it "would not interfere with the federal agency's rate-making powers"); *Litton Sys., Inc. v. AT&T,* 700 F.2d 785, 820 (2d Cir.1983) (holding filed rate doctrine is inapplicable where court is not called upon to even indirectly determine what reasonable rate would have been); *Wegoland, Ltd. v. NYNEX Corp.,* 806 F.Supp. 1112, 1116 (S.D.N.Y.1992) (holding filed rate doctrine is "arguably inapplicable" in cases where courts are not asked to determine what reasonable rate should be); *City of Kirkwood v. Union Elec. Co.,* 671 F.2d 1173, 1179 (C.A.81982) (holding filed rate doctrine does not bar award of antitrust damages where plaintiffs did not challenge reasonableness of rates, but rather their anti-competitive effect).

Some jurisdictions have recognized that certain circumstances preclude the application of the filed rate doctrine. *See e.g. Am. Bankers Ins. Co. v. Alexander,* 818 So.2d 1073 (Miss.2001)(holding claims for breach of fiduciary duty, breach of implied covenants of good faith and fair dealing, and fraud were not barred by filed rate doctrine because these causes of action are founded in the common law).

Additionally, some jurisdictions have specifically applied the filed rate doctrine to ratemaking in the insurance industry. *See e.g. Horwitz v. Bankers Life & Cas. Co.,* 319 Ill.App.3d 390, 253 Ill.Dec. 468, 745 N.E.2d 591 (2001);. *Amundson,* 26 Kan.App.2d 489, 988 P.2d 1208; *Am. Bankers' Ins. Co. v. Wells,* 819 So.2d 1196 (Miss.2001); *Byan v. Prudential Ins. Co. of Am.,* 242 A.D.2d 456, 662 N.Y.S.2d 44 (1997); *North Carolina Steel, Inc. v. Nat'l Council on Comp. Ins.,* 347 N.C. 627, 496 S.E.2d 369 (1998); *Prentice v. Title Ins. Co. of Minn.,* 176 Wis.2d 714, 500 N.W.2d 658 (1993). However, at least one other state has refused to expand the filed rate doctrine to insurance situations. *See e.g. Mitchell v. Chicago Title Ins. Co.,* 2004 WL 2137815, *2 (Minn.Dist.Ct.2004) (specifically

declining to expand the filed rate doctrine to include the insurance industry).

Courts which have adopted the filed rate doctrine have given several reasons for doing so, including: (1) preserving the agency's authority to determine the reasonableness of rates; (2) recognizing the agency's expertise with regard to that industry, whereas courts do not; (3) allowing an action would undermine the regulatory scheme because the statute allows for enforcement by the appropriate state officers; and (4) allowing an action may result in different prices being paid by victorious plaintiffs than non-suing ratepayers, which violates the statutory scheme of uniform rates. *See e.g. Wegoland Ltd.*, 27 F.3d 17 at 21–22.

We find the policy reasons behind the filed rate doctrine persuasive. The filed rate doctrine preserves the stability, uniformity, and finality inherent in rates filed with the regulatory agency and what has been determined to be a reasonable rate by that agency. *Cullum v. Seagull Mid–South, Inc.*, 322 Ark. 190, 907 S.W.2d 741, 745 (1995). Accordingly, we hereby adopt the filed rate doctrine and, furthermore, we find it applicable in the insurance industry. Although not applicable in the present case, we also recognize there are several exceptions as set out above which may prevent its application.

We now turn to the causes of action alleged in the present case. In the 1st cause of action, which applies only to State Farm, the plaintiffs seek a declaratory judgment that insurers must determine the disposition of a traffic citation to the other driver before assigning their insureds a chargeable accident. This cause of action is not the subject of any issue on appeal and thus remains viable.[4]

In the 2nd cause of action and part of the 7th cause of action, the plaintiffs seek a declaratory judgment that an insurer cannot raise recoupment fees based upon the assess-

---

**4.** We note the trial judge dismissed the plaintiffs' 6th cause of action alleging a civil conspiracy against both the facility and State farm. The plaintiffs have not argued this was error. Therefore, any argument as to the dismissal of the 6th cause of action has been abandoned. *Video Gaming, Consultants, Inc., v. S.C. Dep't of Revenue*, 342 S.C. 34, 42, 535 S.E.2d 642, 647 (2000).

ment of surcharge points without a judicial determination of fault. Specifically, the plaintiffs allege State Farm violated § 38–77–625 when it raised the plaintiffs' recoupment fees without a judicial determination that they were at-fault in their accidents. The trial judge dismissed the 2nd cause of action and corresponding parts of the 7th cause of action finding an insurance company does not need to have a judicial determination of fault prior to increasing recoupment fees.

Section 38–77–625 provides: "If an insured is involved in a motor vehicle accident where he is not the at-fault driver, his facility recoupment charge may not be increased by his insurer because of this occurrence." The parties agree that an insured must be at-fault for there to be an increase in his recoupment fees. However, the issue is how fault is to be determined.

The plaintiffs contend a judicial determination of fault is always required. State Farm, however, argues the statute should not be read to always require a judicial determination of fault.[5] We agree. Words used in a statute should be given their plain ordinary meaning. *First Baptist Church v. City of Mauldin,* 308 S.C. 226, 417 S.E.2d 592 (1992). It is not reasonable to read this statute as requiring a judicial determination of fault. The plain language of the statute does not require a judicial determination of fault and to require one would unnecessarily burden the courts and result in more litigation. Accordingly, we affirm the dismissal of the 2nd cause of action and parts of the 7th cause of action to the extent they are predicated on the 2nd cause of action.

In the 5th cause of action, the plaintiffs seek a declaratory judgment that the Facility illegally calculated the facility rate and State Farm collected it without authority.[6] The trial

---

5. The real issue is whether State Farm can make a fault determination which *conflicts* with a judicial determination. As noted above, in the 1st cause of action which remains viable, the plaintiffs are seeking a declaratory judgment that insurers must determine the disposition of a ticket to other driver before assigning their insureds a chargeable accident.

6. The trial judge dismissed the 3rd and 4th causes of action against the Facility and the plaintiffs did not appeal the dismissal. At oral argu-

judge dismissed this cause of action against the Facility finding it barred by the filed rate doctrine. However, in his order partially denying State Farm's motion to dismiss, the trial judge stated the filed rate doctrine had not been adopted in South Carolina and he refused to dismiss these causes of action against State Farm.

■ Having now adopted the filed rate doctrine, however, we find it bars this cause of action against both the Facility and State Farm. The filed rate doctrine bars any causes of actions which necessarily require a court to determine a reasonable rate. *American Bankers' Ins. Co.*, 819 So.2d at 1213 (holding claims requiring the court to determine what a reasonable rate would have been improperly require a court to "second guess" the regulating agency). This cause of action would clearly require us to determine a reasonable facility rate.[7]

Additionally, we note it was the Facility which calculated and set the facility rate. State Farm was not involved in calculating and setting the facility rate and was, in fact, required to use and collect the approved facility rate. *See* S.C.Code Ann. § 38–73–920 (2002)(no insurance may be issued except approved filed rates). Further, we note that contrary to the plaintiffs' assertion, South Carolina insureds are not without a remedy. South Carolina insureds can challenge approved rates pursuant to S.C.Code Ann. § 338–73–1030 (2002). This section specifically provides: "Any person or organization aggrieved with respect to any filing which is in effect may make written application to the director or his designee for a hearing thereon . . ."

ment, the plaintiffs also abandoned these causes of action against State Farm.

7. Contrary to the dissent's assertions, this case cannot be easily re-solved by implementing clear and unambiguous statutes. Resolving this case would necessarily require a court to determine what the proper facility rate should be—which the filed rate doctrine specifically precludes. Furthermore, the dissent's hypothetical discussing a "wrong rate" being applied in footnote 1 is inapplicable in this case. The only cause of action in which the plaintiffs are alleging they were charged the "wrong rate" is the 1st cause of action—which is not the subject of this appeal.

Accordingly, State Farm's motion to dismiss the 5th cause of action should have been granted and thus we reverse the trial judge's denial. We also affirm the grant of the Facility's motion to dismiss this cause of action.

In the 8th cause of action, the plaintiffs allege the Facility and State Farm violated various statutes and regulations and seek damages, including punitive damages. This cause of action relies upon the same statutes which are the basis for the declaratory relief sought in the 2nd, 3rd, 4th, and 5th causes of action. The trial judge dismissed this action against the Facility in its entirety and against State Farm to the extent it relies upon the 2nd cause of action. He denied State Farm's motion to dismiss the parts of this action which rely upon the 3rd, 4th, and 5th causes of action. As stated above, we are reversing the trial judge's denial of State Farm's motion to dismiss the 5th causes of action and the 3rd and 4th causes of action have been abandoned. Accordingly, we also reverse his denial as to the corresponding parts of the 8th cause of action.

## Conclusion

Based on the foregoing, we reverse the partial denial of State Farm's motion to dismiss and affirm the partial grant of State Farm's motion to dismiss. We also affirm the dismissal of all of the claims against the Facility.

**AFFIRMED IN PART AND REVERSED IN PART.**

MOORE, BURNETT, JJ., and Acting Justice BROOKE P. GOLDSMITH concur. TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL, dissenting:

I respectfully dissent. In my view, this case does not require consideration of the "filed rate doctrine" because this is not a "rate case." Therefore, I would reverse the circuit court's dismissal of Plaintiffs' claims that the South Carolina Reinsurance Facility (the Facility) charged Plaintiffs an illegal "facility base rate," and that State Farm Automobile Insurance Company (State Farm) collected this illegal rate. In addition, I would affirm the circuit court's refusal to dismiss Plaintiffs' claims that State Farm issued unauthorized sur-

charge points on Plaintiffs' insurance policies, in violation of the parties' insurance contracts and South Carolina law.

In my opinion, the majority mischaracterizes this case as a "rate case," and as a result, improperly considers the applicability of the "filed rate doctrine." Outlined first by Justice Brandeis in *Keogh v. Chicago & N.W. RY. CO.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), the "filed rate doctrine" hypothesizes that regulatory rates which are duly adopted via administrative channels and/or administrative proceedings are not subject to collateral attack in court. *See also Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*, 8 S.W.3d 48, 51 (Ky.Ct.App.1999) (holding that the filed rate doctrine precludes an agency's liability for damages).

In the traditional "rate case," a plaintiff would argue that he was charged an excessive premium because an administrative body, through the exercise of its discretion, should have adopted a lower premium. This case stands in stark contrast to such a claim. Plaintiffs in the instant case allege that they were improperly charged the wrong rate, though the rate was otherwise valid.[8]

Specifically, Plaintiffs allege that State Farm assessed unauthorized surcharge points to Plaintiffs' insurance policies in violation of the parties' insurance contracts. In addition, Plaintiffs allege that these unauthorized surcharge points were assessed in violation of South Carolina law. Finally, Plaintiffs allege that the Facility violated S.C.Code §§ 38–73–1400 and 38–73–1420 when calculating the "facility base rate," and that State Farm collected this illegal rate.

In my opinion, these causes of action, essentially claims for declaratory relief and damages in the form of overcharges, can be easily resolved by simply implementing the clear and unambiguous terms of the rates outlined in the South Carolina

---

8. To distinguish this case from a "rate case," it is perhaps helpful to use the following illustration: If Plaintiff claims, "in the exercise of discretion, the agency should have adopted some lower rate instead of a rate of X," then Plaintiff is effectively asking the court to substitute its discretion for the administrative agency's. If instead, a rate scheme authorizes a base rate of X, and further provides that, if certain additional conditions exist, then a rate of Y, Plaintiff is free to argue that he does not meet the requirements for issuance of the higher rate; Plaintiff is merely disputing the rate's validity "as applied" to him.

Code.[9] Accordingly, I would allow the Plaintiffs' above-discussed claims and also decline to address the broader issue of the applicability of the "filed rate doctrine" in South Carolina; the doctrine is simply not implicated in this case.

As a final matter, the trial judge also held that Plaintiffs' claim that only certain policy holders could be charged premiums other than the "base" or "objective" rates was predicated on an erroneous reading of the law. Accordingly, the trial judge dismissed this claim against the Facility. Plaintiffs did not argue that this was error on appeal. Since Plaintiffs' assert an identical claim against State Farm, I would dismiss this claim on the same grounds.

Accordingly, I would reverse in part and affirm in part the ruling of the circuit court. I would allow the case to proceed forward and Plaintiffs to assert (1) that the Facility charged Plaintiffs an illegal "facility base rate," (2) that State Farm collected this illegal rate, and (3) that State Farm issued unauthorized surcharge points on Plaintiffs' insurance policies, in violation of the parties' insurance contracts and South Carolina law.

---

**9.** I simply fail to see how performing the mathematical computations of (1) subtracting unauthorized surcharge points from Plaintiffs' insurance policies (Plaintiffs' seventh and eighth causes of action) and (2) correctly applying non-discretionary portions of the statutory rate (Plaintiffs' fifth cause of action) constitutes supplanting the Department of Insurance's discretion.