WISCONSIN'S ENVIRONMENTAL DECADE, INC., Petitioner-Respondent, v. PUBLIC SERVICE COMMISSION, Respondent: WISCONSIN ELECTRIC POWER COMPANY, Appellant.

*No. 76-478. Argued October 31, 1977.—Decided January 3, 1978.*
(Also reported in 260 N.W.2d 712.)

For the appellant there were briefs by *Elwin J. Zarwell, Robert H. Diaz, Larry J. Martin, Andrew M. Barnes, Quarles & Brady,* and *Robert H. Gorske,* vice president and general counsel of Wisconsin Electric Power Company, with oral argument by *Larry J. Martin* and *Robert H. Gorske,* all of Milwaukee.

For Public Service Commission of Wisconsin the cause was argued by *Steven M. Schur,* chief counsel, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Steven Levine,* assistant chief counsel.

For Wisconsin's Environmental Decade, Inc., there was a brief and oral argument by *Kathleen M. Falk* of Madison.

HEFFERNAN, J.   On January 17, 1974, Wisconsin Electric Power Co. (WEPCO) applied to the Public Service Commission (PSC) for increases in electric rates.  WEPCO sought by this application to be made whole, that is, to be enabled to earn a rate of return which had previously been authorized as just and reasonable, but which WEPCO had been unable to earn as a result of increasing costs.

After public hearing, the PSC filed an interim order on July 18, 1974, and a final order on January 27, 1975. Both of these orders authorized WEPCO to insert in its rate schedules an expanded adjustment clause.[1]  As authorized, the expanded adjustment clause included such items as purchased power, fuel, labor, supplies, steam, electric expenses, and supervision.

Wisconsin's Environmental Decade, Inc. (WED) intervened in the proceedings before the PSC and opposed the expansion of the adjustment clause.  After WED's application for rehearing was rejected as to this issue, WED petitioned for review of the PSC orders pursuant to sec. 227.15, Stats.  On October 22, 1976, Circuit Judge Torphy filed a memorandum decision reversing the

[1] Adjustment clauses operate to pass on to consumers, automatically and without further rate hearings, increases in the costs to the utility of the items listed in the adjustment clause. Therefore, once the adjustment clause itself has been authorized after a public hearing, no additional hearings are required before costs to consumers are raised by the application of the mathematical formula contained in the adjustment clause. For example, if an adjustment clause covered fuel costs, and the costs of fuel to the utility increased, the adjustment clause would operate to raise the rates to consumers by the operation of a mathematical formula.

orders of the PSC and remanding the case to the PSC.[2] Judge Torphy held that the expanded adjustment clause violated sec. 196.20(2), Stats.,[3] in that it circumvented the public hearing requirement imposed by that statute. Judgment was filed on January 21, 1977, and it is from this judgment that WEPCO appeals.

Since the enactment of Laws of 1931, ch. 183, sec. 2, sec. 196.20(2), Stats., has required that there be a public hearing before a change in schedules which constitutes an increase in rates may go into effect. Until that time, the statute required only that notice be given to the commission ten days before the change in rates was to go into effect.

Adjustment clauses have been used by utilities in Wisconsin at least since 1918. *Milwaukee Electric Railway & Light Co.*, 21 W.R.C.R. 749 (1918). During the early days of utility regulation, adjustment clauses which included such items as labor costs were occasionally approved. *Milwaukee Electric Railway & Light Co.*, 21 W.R.C.R. 749 (1918); *Wisconsin Gas & Electric Co.*, 25 W.R.C.R. 191 (1920); *Milwaukee Electric Railway & Light Co.*, 26 W.R.C.R. 288 (1922). With the exception of these early cases, however, adjustment clauses have traditionally been of a much more limited scope than the clause involved in this case. Typically, these

---

[2] The January 27, 1975, final order was superseded by an order dated September 15, 1975. The superseding order, however, also contained an expanded adjustment clause; and Judge Torphy correctly held that the case was a continuing controversy, and not moot. *Milwaukee & Suburban Transport Corp. v. Public Service Commission*, 268 Wis. 573, 68 N.W.2d 552 (1955), *appeal dismissed*, 350 U.S. 877.

[3] Sec. 196.20(2), Stats., provides:

"No change in schedules which constitutes an increase in rates to consumers shall be made except by order of the commission, after an investigation and hearing."

clauses have provided for automatic adjustment of rates for changes in the price of purchased fuel, such as coal, oil, or natural gas, or adjustment for the price of power which the utility itself purchases from another utility and then resells. Limited adjustment clauses have also been the general rule in other states. Trigg, *Escalator Clauses in Public Utility Rate Schedules*, 106 U. Pa. L. Rev. 964, 987 (1958).

Adjustment clauses of this more limited variety, which may be called "fuel adjustment clauses," have been widespread since World War I, and they are currently in use in more than forty states. 18 Ariz. L. Rev. 454–55 (1976). The validity of fuel adjustment clauses, however, is not an issue in this case, and we express no opinion as to the permissibility of these clauses under the Wisconsin regulatory scheme. This case concerns only the validity of the expanded adjustment clause approved by the PSC, which authorizes adjustment for such factors as purchased power, fuel, labor, supplies, steam, electric expenses, and supervision.

Utilities have found expanded adjustment clauses to be desirable because of recent economic conditions. Inflationary costs have resulted in unstable utility earnings. West & Eubank, *Automatic Cost of Capital Model*, 95 Pub. Util. Fort. No. 11, pp. 27, 30 (1975). Rate hearings are now seen by many utilities as being too time consuming and costly, and utilities find themselves engaging in virtually continuous rate cases. *Public Service Co. of New Mexico*, 8 P.U.R. 4th 113, 120 (1975) ; *Consumers Organization for Fair Energy Equality, Inc. v. Department of Public Utilities*, — Mass. —, 335 N.E.2d 341 (1975). Expanded adjustment clauses have appeared attractive as the solution to the problem of "regulatory lag," or the period of delay between changes in costs and the reflection of those changed costs in the rate schedules of the utilities. *Trigg, supra,* 106 U. Pa.

L. Rev. at 967; *West & Eubank, supra,* 95 Pub. Util. Fort. No. 11, at 31–2.

On the other hand, it is argued that expanded adjustment clauses result in an effective decrease in the quantum of regulatory control. WEPCO asserts that the statutorily required public hearing is provided when the adjustment clause is adopted in the first place. It argues that the mechanical application of the fixed adjustment clause formula when one of the component prices changes is not a "change in schedules which constitutes an increase in rates" within sec. 196.20(2), Stats., so that no new hearing is required. However, it is clear that the practical effect of the use of expanded adjustment clauses is to defuse, in part, public awareness of changes in utility rates, and to reduce public scrutiny of these changes. The very point of using these clauses is to reduce the volume of rate hearings, and to conserve the time of the regulatory agency. Foy, *Cost Adjustment in Utility Rate Schedules,* 13 Vand. L. Rev. 663, 668 (1960).

Expanded adjustment clauses have also been criticized because they involve, typically, one or more factors, such as labor, the cost of which is subject to partial control by the utility. Automatic adjustment of rates to reflect changes in the cost of these partially controllable factors tends to result in the elimination of incentive of the utility to economize on these items and to seek greater efficiency. *Foy, supra,* 13 Vand. L. Rev. at 664.

However, it is not up to this court to strike the appropriate balance between public participation and simplicity in rate proceedings. That determination is for the legislature. The determinative issue in this case is whether, giving sec. 196.20(2), Stats., a fair construction, the legislature has authorized the PSC to permit

the use of expanded adjustment clauses. We hold that expanded adjustment clauses have not been so authorized.

In construing a statute, the primary source used is the language of the statute itself. *Nekoosa-Edwards Paper Co. v. Public Service Commission,* 8 Wis.2d 582, 591, 99 N.W.2d 821 (1959). When a statute is ambiguous, it is permissible to look to the legislative intent, which is to be found in the language of the statute in relation to its scope, history, context, subject matter, and object intended to be accomplished. *State ex rel. Arnold v. County Court,* 51 Wis.2d 434, 439–40, 187 N.W.2d 354 (1972). A statute is ambiguous if, looking at the language of the statute, a well informed person could have become confused. The ambiguity, however, may arise from the interaction of separate statutes. *Czaicki v. Czaicki,* 73 Wis.2d 9, 14, 242 N.W.2d 214 (1976). In this case, all of ch. 196, Stats., should be considered together in determining whether or not sec. 196.20 (2) is ambiguous, because the entire chapter is *in pari materia. Wisconsin Telephone Co. v. Public Service Commission,* 232 Wis. 274, 293, 287 N.W. 593 (1939), *cert. denied,* 309 U.S. 657 (1940).

We conclude that sec. 196.20 (2), Stats., is ambiguous as applied to expanded adjustment clauses. Secs. 196.19 (3) and 196.21 clearly contemplate that utility rate schedules should be publicly posted. One of the reasons for this requirement is to enable consumers to verify the accuracy of their utility bills. *Cf., Trigg, supra,* 106 U. Pa. L. Rev. at 972. The use of a complicated adjustment clause such as the one involved in this case undercuts this statutory purpose. It is not, therefore, unambiguous whether these clauses are permitted under sec. 196.20 (2). The argument that the adjustment clause itself is part of a fixed schedule, which does not change when adjustments in rates are made, so that there has been no "change in schedules which constitutes an in-

crease in rates," does no more than cloud the issue, because the statute must be construed in conjunction with the rest of the chapter.

The primary purpose of the public utility laws in this state is the protection of the consuming public. *Wisconsin Power & Light Co. v. Public Service Commission*, 45 Wis.2d 253, 259, 172 N.W.2d 639 (1969). Public agencies are granted a great deal of latitude in regulatory matters, because of the expertise of the agencies. However, actions of the agency will not be allowed to prevail when they conflict with the legislative history or intent. *Wisconsin Southern Gas Co. v. Public Service Commission*, 57 Wis.2d 643, 205 N.W.2d 403 (1973). Moreover, decisions of an agency like the present one, which deal with the scope of the agency's own power, are not binding on this court. *Big Foot Country Club v. Department of Revenue*, 70 Wis.2d 871, 235 N.W.2d 696 (1975).

Our legislature has chosen to impose a public hearing requirement on the process of changing schedules and rates, rather than the more common requirement in some states of notice to the agency before the change goes into effect. The fact that the legislature in 1931 adopted the more stringent mandatory notice requirement is indicative of the legislative intent to guarantee public participation in the rate-making process. Undoubtedly, those who drafted the utility-regulation statutes in this state did not anticipate that extensive changes in rates could be made without benefit of public hearing, simply by the expedient of using expanded adjustment clauses. *Cf., Trigg, supra,* 106 U. Pa. L. Rev. at 965, 996. We conclude that expanded adjustment clauses are not permitted under sec. 196.20(2), Stats., because they undermine the mandatory hearing requirement embodied therein. If expanded adjustment clauses are to be used

as a regulatory tool, they will first have to be approved by the legislature.[4]

*By the Court.*—Judgment affirmed.

---

[4] We find the expanded adjustment clause in this case to be invalid, because it circumvents the public hearing requirement mandated by the statute. We note, however, that the clause includes aspects typical of the more traditional fuel adjustment clause. We re-emphasize the fact that the validity of fuel adjustment clauses is not at issue in this case. The clause involved here is invalid because of the additional elements which it contains.