FRED A. RISSER AND ED JACKAMONIS, Legislators State Legislature
You have asked whether the Public Service Commission violates sec. 196.20(2), Stats., by granting utility rate increases under automatic fuel adjustment clauses without hearings.
It is my opinion that the granting of utility rate increases under automatic fuel adjustment clauses without hearings probably does not per se violate sec. 196.20(2), Stats. Whether there would be a violation would depend upon the type of adjustment clause being considered.
Section 196.20(2), Stats., provides: "No change in schedules which constitutes an increase in rates to consumers shall be made except by order of the commission, after an investigation and hearing."
The Wisconsin Supreme Court, in Wis. Environmental Decade v.Public Service Comm., 81 Wis.2d 344, 260 N.W.2d 712 (1978), discussed the procedural requirements mandated in sec. 196.20(2), Stats., in reference to an "expanded adjustment clause." The expanded adjustment clause requested by Wisconsin Electric Power Company would have included, in addition to fuel, such expense items as purchased power, labor, supplies, steam, electric expenses, and supervision. The clause would have permitted the increases in the *Page 109 
cost of these items to be passed on to consumers automatically and without further hearings. The court ruled that the expanded adjustment clause violated sec. 196.20(2), Stats., in that it circumvented the public hearing requirement imposed by that statute and stated that if expanded adjustment clauses are to be used as a regulatory tool, they will first have to be approved by the Legislature.
The court went out of its way to note that the validity of the traditional fuel adjustment clause was not at issue in the case before it, and emphasized that it expressed no opinion as to the permissibility of the fuel adjustment clause under the Wisconsin regulatory scheme. The court stated:
 We find the expanded adjustment clause in this case to be invalid, because it circumvents the public hearing requirement mandated by the statute. We note, however, that the clause includes aspects typical of the more traditional fuel adjustment clause. We re-emphasize the fact that the validity of fuel adjustment clauses is not at issue in this case. The clause involved here is invalid because of the additional elements which it contains.
81 Wis.2d at 352 n. 4.
In my opinion, the court probably would not hold traditional adjustment clauses limited to fuel illegal. Adjustment clauses related to purchased power present a closer question.
The court noted that limited adjustment clauses have been used in Wisconsin for a long time:
 Adjustment clauses have been used by utilities in Wisconsin at least since 1918. Milwaukee Electric Railway Light Co., 21 W.R.C.R. 749 (1918). During the early days of utility regulation, adjustment clauses which included such items as labor costs were occasionally approved. Milwaukee Electric Railway Light Co., 21 W.R.C.R. 749 (1918); Wisconsin Gas Electric Co., 25 W.R.C.R. 191 (1920); Milwaukee Electric Railway Light Co., 26 W.R.C.R. 288 (1922). With the exception of these early cases, however, adjustment clauses have traditionally been of a much more limited scope than the clause *Page 110 
involved in this case. Typically, these clauses have provided for automatic adjustment of rates for changes in the price of purchased fuel, such as coal, oil, or natural gas, or adjustment for the price of power which the utility itself purchases from another utility and then resells. Limited adjustment clauses have also been the general rule in other states. Trigg, Escalator clauses in Public Utility Rate Schedules, 106 U. Pa. L. Rev. 964, 987 (1958).
"Adjustment clauses of this more limited variety, which may be called `fuel adjustment clauses,' have been widespread since World War I, and they are currently in use in more than forty states. 18 Ariz. L. Rev. 454-55 (1976)." 81 Wis.2d at 347-48.
Thus, the Public Service Commission has, for a number of years, interpreted the statutory provision in question as allowing adjustments without hearing for purchased fuel or power. This interpretation has the apparent acquiescence of the Legislature, and is thus entitled to great weight in construing the statutory provision. Dunphy Boat Corp. v. Wisconsin E. R. Board,267 Wis. 316, 64 N.W.2d 866 (1954).
The Public Service Commission, in deciding whether a particular automatic adjustment clause is legal may be guided by factors alluded to by the court in Wis. Environmental Decade: (1) public interest in participating in the rate-making process, and (2) the controllability of the items within the adjustment clause.
Such factors as advances in technology and industry practice may place historical practice in a new factual and legal context. Thus, to the extent that purchases of power may presently be considered within the control of the utility by appropriate planning and selection of generator technology, the historical exception from sec. 196.20(2) hearings for such adjustment clauses may be a proper subject for careful Public Service Commission reconsideration.
Finally, I would point out that these matters are not entirely free from doubt. If the Legislature believes that the Public Service Commission practice of allowing automatic adjustment clauses is no *Page 111 
longer good public policy, the Legislature may wish to consider this issue.
BCL:RJ-M:FJS