CENTURYTEL OF THE MIDWEST-KENDALL, INC. and CenturyTel, Inc., Petitioners-Appellants,†

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Respondent-Respondent,

AT&T COMMUNICATIONS OF WISCONSIN, L.P., MCI Telecommunications Corp. and WorldCom Technologies, Inc., Intervenors-Respondents.

Court of Appeals

*No. 02–0053. Submitted on briefs June 12, 2002.—Decided August 29, 2002.*

2002 WI App 236

(Also reported in 653 N.W.2d 130.)

† Petition to review dismissed 11-12-02.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Bradley D. Jackson, David A. Meisinger,* and *Katherine E. Lazarski* of *Foley & Lardner,* Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Steven Levine* of *Public Service Commission of Wisconsin.*

On behalf of the intervenors-respondents MCI Telecommunications Corporation and WorldCom Technologies, Inc., the cause was submitted on the brief of *Niles Berman* and *Janet L. Kelly* of *Wheeler, Van Sickle & Anderson, S.C.,* Madison; and on behalf of the

intervenors-respondents AT&T Communications of Wisconsin, L.P., the cause was submitted on the brief of *Dennis P. Birke* of *Dewitt Ross & Stevens, S.C.*, Madison.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. VERGERONT, P.J. The Public Service Commission (PSC) decided that CenturyTel of the Midwest-Kendall, Inc. (Kendall), a telecommunication utility, increased rates without a hearing and a PSC order of approval in violation of Wis. Stat. § 196.20(2m).[1] Therefore, the PSC ruled, Kendall violated the filed-rate statute, Wis. Stat. § 196.22, and those customers who experienced a rate increase as a result were entitled to a refund. Kendall appeals the circuit court order affirming that decision. Kendall contends the changes in its rates were lawfully filed with the PSC, and it therefore did not violate the filed-rate statute. Kendall also contends that the refund order violates Wis. Stat. § 196.37(1), which prohibits retroactive ratemaking, and that the PSC lacks the authority to order the refund.

¶ 2. We conclude the PSC properly determined that Kendall's increase in rates violated Wis. Stat. § 196.20(2m) and the filed-rate statute, Wis. Stat. § 196.22. We also conclude that the refund order did not violate the prohibition in Wis. Stat. § 196.37(1) against retroactive ratemaking, and that the PSC had the authority to order a refund under § 196.37(2). Accordingly, we affirm the circuit court order affirming the PSC's refund order.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## BACKGROUND

¶ 3. This dispute arises out of Kendall's acquisition of nineteen telephone exchanges from Wisconsin Bell, Inc., d/b/a Ameritech Wisconsin (Ameritech), effective December 1, 1998. Prior to this purchase, Kendall owned one exchange (Kendall exchange).

¶ 4. In anticipation of the acquisition, Kendall filed with the PSC on October 26, 1998, a modification of its schedules of rates to take effect on December 1, 1998. These schedules added the nineteen new exchanges and modified the levels of Kendall's various access rate elements. "Access rates" are the rates long distance carriers must pay for use of Kendall's telecommunication utilities. Kendall's letter accompanying the modified schedules did not describe the modifications as either an increase or decrease, but, rather, stated:[2]

> Effective December 1, 1998, Kendall will discontinue its concurrence with the Wisconsin State Telecommunications Association Intrastate Charge Tariff No. 1 and concur in the rates, rules and regulations of CenturyTel access tariff. Kendall-specific switched access rates have been added to the CenturyTel access tariff in this filing. The new switched rates are the Wisconsin State benchmark rates and all other rates are existing CenturyTel rates.

¶ 5. PSC staff sent a letter to Kendall, dated November 13, 1998, confirming receipt of the modified schedules and stating:

---

[2] The schedules a utility must file under WIS. STAT. § 196.19(1) and the rules and regulations that affect its services, products, and rates, which it must file with the PSC under § 196.19(2), are known as "tariffs." *GTE North Inc. v. Pub. Serv. Comm'n*, 176 Wis. 2d 559, 562 n.1, 500 N.W.2d 284 (1993).

The purpose of this filing is to remove Kendall Section 17 Access Rates and to provide for the change effective December 1, 1998, in which Kendall will discontinue its concurrence with the Wisconsin State Telecommunications Association Intrastate Access Charge Tariff No. 1 and concur in the rates, rules and regulations of CenturyTel access tariff. This filing is made with the understanding that it does not result in an unauthorized rate increase or service restriction.

PSC staff reiterated this understanding in a letter to Kendall dated November 19, 1998, in response to some additional information Kendall provided on certain local rates:

The entire tariff included with your [initial letter] as amended by your [second] letter is being placed on file under Amendment No. 26. The purpose of this filing is to provide for the change effective December 1, 1998, in which Kendall will acquire 19 exchanges from Ameritech. This filing is made with the understanding that it does not result in an unauthorized rate increase or service restriction.

¶ 6. AT&T Communications of Wisconsin, Inc. and MCI Telecommunications Corp. and WorldCom Technologies, Inc. (MCI WorldCom), both long distance telecommunication carriers, were customers of Ameritech in the nineteen exchanges before Kendall's acquisition and remained Kendall's customers in those exchanges after the acquisition. In March and May 1999, respectively, they complained to the PSC that Kendall had unlawfully raised access rates in the nineteen exchanges without a hearing. After reviewing AT&T's complaint, PSC staff decided on March 26, 1999, that the new access rates in the nineteen exchanges represented an increase from the rates charged by Ameritech, and therefore they required prior PSC approval;

staff decided that Kendall would have to refund the difference for the period of time between the initial application of the access rate increase and the date on which the PSC would approve the new rates. Kendall was informed of this and informed that the next step was for it to apply for a rate increase. Kendall did not apply for a rate increase, so the PSC initiated a Class 2 proceeding under WIS. STAT. § 227.01(3)(b).

¶ 7. At the hearing before the PSC, the issue was whether Kendall violated WIS. STAT. § 196.20(2m), which requires that "no change in schedules which constitutes an increase in rates to consumers may be made except by order of the commission, after an investigation and opportunity for a hearing . . . ." Kendall's position was that it did not increase access rates in the nineteen exchanges purchased from Ameritech, and that it acted with the staff's knowledge and acquiescence.

¶ 8. The PSC issued its decision on November 30, 2000. It made the following findings, among others. In connection with the acquisition, Kendall raised rates for access customers in the nineteen exchanges above the rates Ameritech charged, but lowered its access rates in the Kendall exchange. The schedule changes Kendall filed were approved under WIS. STAT. § 196.20(2), which governs rates decreases. The changes in Kendall's schedules constituted an increase to AT&T, MCI Worldcom, and other access consumers in the nineteen exchanges over what they were paying Ameritech for access prior to Kendall's acquisition. Kendall knew before the acquisition that its schedules would and did have the effect of increasing rates for these access customers in the nineteen exchanges. Kendall at no time made an application for an access

rate increase in any of the nineteen exchanges, and the PSC did not issue an order authorizing the access rate increase.

¶ 9. The PSC concluded that Kendall had violated Wis. Stat. § 196.20(2m) by increasing access rates on December 1, 1998, without a hearing and PSC approval. In its opinion, the PSC stated that it was not persuaded that Kendall misled PSC staff prior to the acquisition, and it acknowledged that the staff erred when it "attempted to place the Kendall tariff on file." Under the circumstances, the PSC concluded it would be unjust to impose a penalty on Kendall. The PSC continued:

> Nevertheless Kendall did not adhere to the mandated statutory requirements even after being informed by PSC ... staff on or about March of 1999 that they believed Kendall's new access changes required prior commission approval. Rather Kendall appears to have taken a calculated gamble and lost. They are now obligated to undo the rate increase for access rates in the 19 exchanges and make their affected customers whole.

The PSC ordered Kendall to reinstate the pre-acquisition access rates in the nineteen exchanges and to refund with interest to customers who had experienced the rate increase. The order stated it was not a limitation on Kendall's ability to seek approval of future rate increases as required by law, but the opinion made clear that the rate increase that had been applied to access customers in the nineteen exchanges was void as of the date of the decision and order.

¶ 10. In ordering a refund, the PSC considered the filed-rate statute, Wis. Stat. § 196.22, which provides:

> **Discrimination forbidden.** No public utility may charge, demand, collect or receive more or less

compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in the schedules for the service filed under s. 196.19, including schedules of joint rates, as may at the time be in force, or demand, collect or receive any rate, toll or charge not specified in the schedule.

The PSC concluded that Kendall had violated this statute because it had charged access rates that were not properly filed under WIS. STAT. § 196.20(2m). The PSC relied on *GTE North Inc. v. Public Service Commission*, 176 Wis. 2d 559, 569, 500 N.W.2d 284 (1993), in deciding that it had the authority to order refunds in this situation.

¶ 11. Kendall sought judicial review of the refund order, and the circuit court affirmed the PSC's order.

## DISCUSSION

¶ 12. On appeal, Kendall contends its increased access rates were lawfully filed with the PSC, and the PSC therefore erred in concluding it violated WIS. STAT. § 196.20(2m) and the filed-rate statute, WIS. STAT. § 196.22. Kendall also argues that the refund order violates WIS. STAT. § 196.37(1), the prohibition against retroactive ratemaking, and that the PSC is without authority to make such an order.[3]

---

[3] We review the decision of the PSC, not that of the circuit court. *See Richland Sch. Dist. v. DILHR*, 166 Wis. 2d 262, 273, 479 N.W.2d 579 (Ct. App. 1991). The lower court affirmed the PSC's refund order on the ground that the PSC approved the new rates only conditionally. Kendall contends the circuit court erred in doing so, but, because we review the PSC's decision, we do not address the circuit court's rationale for affirming the PSC.

¶ 13. Kendall is not challenging any of the PSC's findings. We therefore are presented with issues of statutory construction, which are questions of law, subject to our de novo review. *Kimberly-Clark Corp. v. Pub. Serv. Comm'n*, 110 Wis. 2d 455, 466, 329 N.W.2d 143 (1983). Although we are not bound by an agency's construction of a statute, we may give it either great weight or due deference, depending on the circumstances. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). We examine whether and how much to defer to the PSC in the context of each of Kendall's challenges to the PSC's decision.

*Requirements for Increasing Rates, WIS. STAT. § 196.20(2m)*

¶ 14. We address first Kendall's contention that the new access rates were properly filed. WISCONSIN STAT. § 196.19(1) requires that each public utility:[4]

> [F]ile with the commission schedules showing all rates, tolls and charges which it has established and which are in force at the time for any service performed by it within the state, or for any service in connection therewith or performed by any public utility controlled or operated by it. The rates, tolls and charges shown on such schedules may not be changed except as provided under this chapter.

WISCONSIN STAT. § 196.20(2m) addresses rate increases and provides, with certain exceptions not applicable here: "[N]o change in schedules which constitutes an

---

[4] "Public utility" includes "a telecommunication's utility." WIS. STAT. § 196.01(5)(a)2.

increase in rates to consumers may be made except by order of the commission, after an investigation and opportunity for hearing."

¶ 15. The procedure for a utility seeking a rate increase begins with an application filed with the PSC, followed by a hearing after notice to customers. WIS. ADMIN. CODE § PSC 2.10. A rate increase hearing is a Class 1 contested case, WIS. STAT. § 227.01(3)(a), in which the utility, customers, and the agency are all entitled to present evidence, cross-examine witnesses and make arguments to the PSC. WIS. STAT. §§ 227.44–227.46.

¶ 16. WISCONSIN STAT. § 196.20(2)(am) applies to rate decreases for telecommunication utilities:

> (am) For telecommunication utilities, a proposed change which constitutes a decrease in rates shall be effective at the time specified in the tariff as filed unless the commission, either upon complaint or upon its own motion, finds after investigation and hearing that the rate reduction violates s. 196.204 [subsidizing affiliate] or 196.219 [protection of telecommunication consumers]. Upon such a finding, the commission may order changes in the rates, terms and conditions.

¶ 17. Kendall acknowledges that there was no hearing on the new access rates and the PSC did not issue an order approving them. Kendall also does not appeal the PSC's finding that the new access rates were an increase over the rates Ameritech charged in the nineteen exchanges. Nevertheless, Kendall argues, the PSC approved the filing of the new rates without a hearing through its November 1998 letters, and this complies with WIS. STAT. § 196.20(2)(am) under which a hearing and the PSC order are not necessary. According to Kendall, the PSC erred in applying § 196.20(2m),

which governs rate increases, rather than § 196.20(2)(am), which governs rate decreases.

¶ 18. On this issue of statutory construction and application, we conclude we should give at least due weight to the PSC's decision. Due weight is appropriate when the legislature has charged the agency with the enforcement of the statute in question. *UFE Inc.*, 201 Wis. 2d at 286. The PSC is responsible for administering the statutes regarding rate increases and decreases. When we give due weight to an agency decision, we do not overturn a reasonable agency decision that comports with the purpose of the statute, unless we determine there is a more reasonable interpretation. *Id.* at 286–87. Because we conclude that the PSC's decision that Kendall violated Wis. Stat. § 196.20(2m) meets this standard, we need not decide whether that decision is entitled to great weight deference, as the respondents contend.[5]

¶ 19. The evident purpose of the requirements of notice to customers, the opportunity for a hearing, and a PSC order of approval for a rate increase is to guarantee public participation in the ratemaking process, *Wisconsin's Environmental Decade, Inc. v. Public Service Commission*, 81 Wis. 2d 344, 351, 260 N.W.2d 712 (1978), and scrutiny by the PSC before a utility increases its rates. The contrasting lack of these requirements for a rate decrease reflects the assumption that a reduction in rates initiated by a utility does not pose the same risk of unreasonableness or unfairness to customers that a rate increase does.

---

[5] Kendall argues that we should review the PSC's decision de novo, but it does not separately analyze each of the issues it raises on appeal in light of the appropriate standard of review.

¶ 20. The PSC's decision that the requirements in Wis. Stat. § 196.20(2m) for a rate increase apply in this case furthers the purpose of that statute by considering whether the new access rates actually are an increase, rather than simply accepting the utility's choice on how to treat the change. The PSC's decision that the November 1998 letters do not obviate the need for compliance with the requirements for a rate increase is a reasonable one. The letters do not determine that the new access rates are not an increase; they simply express the PSC staff's understanding that they are not, apparently based on information provided by Kendall. The PSC found that Kendall knew that the new access rates were an increase to customers in the nineteen exchanges, and Kendall does not challenge that finding. It is reasonable for the PSC to decide that, when a utility proposes to make changes in rates that it knows are an increase, it must comply with the requirements of § 196.20(2m).

¶ 21. We also conclude that Kendall's construction of Wis. Stat. § 196.20(2m) and (2)(am) is not more reasonable than the PSC's construction. Under Kendall's construction, a utility may avoid the notice requirements, the hearing process, and the accompanying scrutiny of the need for and effect of an increase in rates by simply choosing to utilize the process for a decrease in rates. That construction of the two sections is inconsistent with the purposes of § 196.20(2m). We therefore conclude that the PSC correctly decided that Kendall increased its access rates in the nineteen exchanges in violation of § 196.20(2m).

*Filed-Rate Statute, Wis. Stat. § 196.22*

¶ 22. The filed-rate statute, Wis. Stat. § 196.22, prohibits public utilities from charging any rate other

850

than those "specified in the schedules for the services filed under s. 196.19." Kendall argues that the PSC erred in ruling that it had violated this statute; to the contrary, Kendall argues, once it filed its new access rates for the nineteen exchanges with the PSC, it was required by § 196.22 to charge those rates beginning December 1, 1998. Kendall's contention is premised on its position that the new access rates for the nineteen exchanges were properly filed. However, we have concluded that the PSC correctly decided those rates were not properly filed because Kendall did not comply with the procedures in WIS. STAT. § 196.20(2m). Therefore, the precise question under the filed-rate statute is whether the PSC correctly decided that this statute requires a utility to charge only those rates that have been filed with the PSC in conformity with the applicable statutory requirements.

¶ 23. In reviewing the PSC's conclusion that Kendall violated WIS. STAT. § 196.22, we need not decide whether to defer to the PSC because we conclude its construction of § 196.22 is the only reasonable construction. Section 196.22 refers to rates " . . . specified in the schedules for the service filed under s. 196.19 . . . ." WISCONSIN STAT. § 196.19(1) defines what must be filed with the PSC and also provides that the "rates, toll and charges shown on such schedules may not be changed except as provided under this chapter." Therefore, the "filed" rates referred to in § 196.22 are those rates that are filed in compliance with the applicable statutory requirements, and such requirements plainly include those in WIS. STAT. § 196.20(2m) for changes in schedules that increase rates.

¶ 24. Kendall relies on *Prentice v. Title Insurance Co. of Minnesota*, 176 Wis. 2d 714, 720 n.3, 500 N.W.2d

658 (1993), in support of its argument that the new access rates it filed with the PSC are binding on it and on its customers. The filed-rate doctrine applied in *Prentice* is a judicially-created doctrine that "prohibits a plaintiff from claiming a lower rate than the one filed by a regulated entity with the appropriate regulatory agency because the filed rate alone governs the relationship between the parties." *Id.* at 721 (citation omitted). Courts have adopted this doctrine because "allowing a state court to award damages based on a hypothetical rate lower than the filed rate would undermine the regulatory scheme because a plaintiff could obtain greater relief from the court than from the regulatory agency." *Id.* (citation omitted). This judicially-created doctrine does not limit the statutory authority of a regulatory agency to determine whether rates are properly filed, and it therefore has no bearing on this case.[6]

*Prohibition on Retroactive Ratemaking, WIS. STAT. § 196.37(1)*

¶ 25. Kendall contends the refund order constitutes retroactive ratemaking in violation of WIS. STAT. § 196.37(1). This section provides:

> (1) If, after an investigation under this chapter or ch. 197, the commission finds rates, tolls, charges,

---

[6] The judicially-created filed rate doctrine has its origins in *Keogh v. Chicago & N.W. Railway Co.*, 260 U.S. 156 (1922), and has been applied in the context of many industries where rates are regulated. Most recently, we applied the doctrine in an antitrust suit seeking damages on the ground that milk prices established by a federal agency were invalid because they were the result of manipulation by certain corporations. *Servais v. Kraft Foods, Inc.*, 2001 WI App 165, 246 Wis. 2d 920, 631 N.W.2d 629, *aff'd* 2002 WI 42, 252 Wis. 2d 145, 643 N.W.2d 92.

schedules or joint rates to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise unreasonable or unlawful, the commission shall determine and order reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future.

Since Kendall frames this argument in terms of the authority of the PSC to order refunds, we will employ a de novo standard of review. *See Wisconsin Power & Light Co. v. Pub. Serv. Comm'n*, 181 Wis. 2d 385, 392, 511 N.W.2d 291 (1994) (applying a de novo standard of review because the issue of statutory construction concerned the PSC's authority).[7]

¶ 26. WISCONSIN STAT. § 196.37(1) specifies the "PSC's remedial authority following a determination that public utility rates are unreasonable or unjustly discriminatory." *Kimberly-Clark Corp.*, 110 Wis. 2d 455 at 463. It "expressly limits the PSC's authority to setting rates prospectively only." *Id.* Because of § 196.37(1), the PSC has no power to "find reasonable value for service already rendered. Its jurisdiction is to fix rates, service, etc., to be followed in the future." *City of Milwaukee v. City of West Allis*, 217 Wis. 614, 620, 258 N.W. 851 (1935).

---

[7] We recognize that the supreme court has also chosen to defer to the PSC even when the issue of statutory construction concerned the scope of the PSC's authority. *Kimberly-Clark Corp. v. Pub. Serv. Comm'n*, 110 Wis. 2d 455, 464–66, 329 N.W.2d 143 (1977). However, we need not resolve this apparent conflict because the standard of review does not affect the outcome of our analysis of WIS. STAT. § 196.37.

¶ 27. The threshold question is whether the PSC was "determin[ing] and order[ing] reasonable rates" when it ordered the refunds. We conclude it was not for the following reasons.

¶ 28. Considering first the statutory language, it is true that the PSC did determine that the increased access rates were "unlawful." However, the remedy for the unlawfulness did not involve determining what access rates would have been reasonable for the period since December 1, 1998, and basing the refund on that amount. Rather, since the PSC determined the increased access rates were unlawful because they were not filed as required by statute, the PSC voided those rates, leaving in effect the rates that were previously approved by the PSC. True, the refund order was a "retroactive" remedy, in that it had the effect of restoring the previously approved access rate retroactively. But the PSC was not engaged in determining and setting reasonable rates—either retroactively or prospectively.

¶ 29. Second, a review of the cases discussing and applying the proscription against retroactive ratemaking persuades us that the PSC's refund order in this case does not come within that proscription.

¶ 30. One of the purposes of Wis. Stat. § 196.37(1) is to "prevent a company from recouping losses caused by errors in judgment or through company mismanagement. Without this rule, there would be no incentive for efficient management." *Wisconsin's Envtl. Decade, Inc. v. Pub. Serv. Comm'n*, 98 Wis. 2d 682, 699, 298 N.W.2d 205 (Ct. App. 1980). For this reason, the PSC may not take into account a company's past losses when determining a just and reasonable rate, with this exception: the PSC may base an increase in rates on a utility's operating statement that includes an amortized portion

of loss caused by an extraordinary casualty loss, which had occurred through no fault of the utility and which the utility had not been allowed to insure against or set up a reserve for. *Id.* at 699–700.

¶ 31. WISCONSIN STAT. § 196.37(1) also serves to prevent the PSC from reducing rates to take into account a utility's "past undue profits" or to make up for taxes that a utility did not incur. *Madison Gas & Elec. Co. v. Pub. Serv. Comm'n*, 150 Wis. 2d 186, 195–96, 441 N.W. 311 (Ct. App. 1989) (holding that the PSC's decision to use lower federal income tax expense in setting utility's future rate was not an attempt to wipe out unanticipated profits, but simply avoidance of over-collection that would otherwise occur in view of change in federal tax law). Thus, whether a rate increase or decrease is at issue, under § 196.37(1) the PSC is authorized to evaluate a just and reasonable rate only for services that will be provided in the future; the agency may not, with the exception of an extraordinary casualty loss, adjust that rate to take into account an over or under valuation of services provided in the past.

¶ 32. The prohibition of WIS. STAT. § 196.37(1) also applies to refunds or credits to consumers that are based on a re-evaluation of the reasonableness of the rates for past services. Thus, while the PSC has the authority to allow a utility to increase its rates on an interim basis pending the final determination on permanent rates, it may not in a final order direct a refund of sums the utility collected under the interim rate order—if, for example, the increase allowed in the interim order was greater than that determined to be reasonable in the final order. *Friends of the Earth v. Pub. Serv. Comm'n*, 78 Wis. 2d 388, 412–13, 254 N.W.2d 299 (1977). Ordering a refund of rates previously au-

thorized by the PSC, whether on an interim or permanent basis, violates the rule against retroactive ratemaking. *Id.* On the other hand, if the interim order is conditioned on the possibility that a refund might be required, the PSC does have the authority to order a refund in the final order because in this situation "the PSC has not fully exercised its ratemaking power until such interim rates are re-evaluated in the final order." *Id.* at 412.

¶ 33. A credit to customers rather than a refund was involved in *Wisconsin Power & Light Co.*, 181 Wis. 2d 385. When that utility applied for a rate increase, the PSC discovered that the utility had been grossly overcharged for coal and determined the utility had been imprudent in administering its contract for coal. The PSC therefore ordered the utility to pay a penalty, based on a portion of the overcharges, in the form of credits to customers. *Id.* at 390–91. The PSC acknowledged this order constituted retroactive ratemaking. However, it argued that the court should recognize an exception for "management imprudence," allowing the PSC the authority to order a utility to refund any "imprudently incurred costs, even though the costs were collected pursuant to the utility's PSC-approved rates." *Id.* at 395 The court declined to create such an exception, reasoning that this exception would "swallow the rule" against retroactive ratemaking. *Id.*

¶ 34. Kendall argues that *Friends of the Earth* and *Wisconsin Power & Light* support its position that the refund order in this case is retroactive ratemaking, but we do not agree. In both cases the PSC had determined that a particular rate was reasonable (in the former, on an interim basis), and Wis. Stat. § 196.37(1) prevented the PSC from re-evaluating the reasonableness of that rate for services already

provided. Kendall has provided us with no case, and we have discovered none, where § 196.37(1) was applied when the PSC was not evaluating the reasonableness of rates for services already provided.

¶ 35. Third, *GTE North*, on which the PSC relies, supports the conclusion that Wis. Stat. § 196.37(1) is not implicated when a refund is ordered for reasons other than the PSC's determination that rates for services already provided were not reasonable. In *GTE North*, the court concluded that the PSC had the authority to order a refund when a utility charged a customer for a service in violation of the filed-rate statute, Wis. Stat. § 196.22. 176 Wis. 2d at 570. For purposes of its decision, the court assumed that the utility had filed no tariff for the service. *Id.* at 563. The court concluded that the PSC had the authority under Wis. Stat. § 196.37(2) to order a refund of the charges. This section provides:

> (2) If the commission finds that any measurement, regulation, practice, act or service is unjust, unreasonable, insufficient, preferential, unjustly discriminatory or otherwise unreasonable or unlawful, or that any service is inadequate, or that any service which reasonably can be demanded cannot be obtained, the commission shall determine and make any just and reasonable order relating to a measurement, regulation, practice, act or service to be furnished, imposed, observed and followed in the future.

¶ 36. The court in *GTE North* rejected the utility's argument that the phrase "in the future" allowed the PSC to formulate only future remedies and future changes in utility charges, practices, acts or services, but not refunds for past charges, practices, acts or services that are now determined to have been unlawful. The court observed that the prior version of

Wis. Stat. § 196.37(2) had contained a broad authorizing clause that was not modified by the phrase "in the future": "and [the PSC] shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable."[8] *Id.* at 566–67. Although the legislature deleted this clause, the Act in which it did so expressly stated that "the legislature did not intend to make any substantive change in the law treated by this act." *Id.* Therefore, the court reasoned, the phrase "in the future" remaining in subsec. (2) could not be construed as a limitation on the PSC's authority. The court concluded that the PSC had the authority under the revised version of subsec. (2) to order a refund because it is a "just and reasonable order regarding a 'measurement, regulation, act, practice, or service.' " *Id.* at 567. The court also decided that public policy supported this result.

> In addition to the language and history of the statute, the public policy behind chapter 196, Stats., further convinces us that the legislature intended that the PSC have the authority to order a refund of compensation collected by a utility in violation of its filed tariffs. We must presume a legislative intent that

---

[8] The complete version of Wis. Stat. § 196.37(2), before amended by 1983 Wis. Act 53 at 747–48, provided:

> Whenever the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, insufficient, preferential, unjustly discriminatory or otherwise unreasonable or unlawful, or shall find that any service is inadequate, or that any service which can be reasonably demanded cannot be obtained, the commission shall determine and by order fix reasonable measurements, regulations, acts, practices or service to be furnished, imposed, observed and followed in the future in lieu of those found to be unreasonable, inadequate or otherwise unlawful, *and shall make such other order respecting such measure, regulation, act, practice or service as shall be just and reasonable.* (Emphasis added.)

advances the purposes of the statute. . . . The primary
purpose of the public utility laws in this state is the
protection of the consuming public. . . . Placing author-
ity in the PSC to order refunds in cases where a utility
is in violation of its filed tariffs furthers this public
policy.

*Id.* at 567–68.

Allowing the PSC to order refunds in cases where
utilities have provided untariffed services or charged a
rate higher than its tariffed rates furthers this goal [of
remedying utility price discrimination] by allowing the
PSC to control price discrimination through strict
application of the filed rate doctrine. Section 196.22,
Stats., is a statutory expression of the filed rate doc-
trine. The doctrine generally forbids a regulated utility
to charge rates for its services other than those prop-
erly filed with the appropriate regulatory authority.

*Id.* at 569.

¶ 37. The court in *GTE North* did not mention
Wis. Stat. § 196.37(1). In Kendall's view, § 196.37(2),
rather than § 196.37(1), was applicable in *GTE North*
because the utility there had filed no schedule for the
services. However, the facts regarding what the utility's
tariffs encompassed were disputed. The court of appeals
had concluded that the PSC "did not sufficiently explain
why it concluded that GTE's contracts . . . [for time and
temperature announcement services] were not autho-
rized under GTE's 'Special Equipment of Special As-
semblies of Equipment' tariff" and had remanded on
that issue. *Id.* at 563. However, the supreme court said,
for purposes of resolving the issue before it—"whether
the PSC has the statutory authority to order a refund of
compensation collected by a utility in violation of its
filed tariffs"—it would "assume that GTE's contracts . . .
were not authorized by tariffs." *Id.* In other words, the

859

utility may have believed that the services at issue were included in schedules already filed, but the PSC may have properly decided they were not.

¶ 38. Although the court in *GTE North* did not explain why WIS. STAT. § 196.37(2) rather than § 196.37(1) was applicable, our reading of the case is that § 196.37(1) did not apply because the refund order was not based on a determination that the contract rates were unreasonable; that is, the utility was not ordered to refund the difference between the rates it charged and reasonable rates. Rather, the refund order was based on a determination that the utility had violated the filed-rate doctrine by charging for a service when a rate for that service had not been approved by the PSC. Therefore, the remedy was not a refund of the difference between a reasonable rate and the rate actually charged, but a refund of the difference between the filed rate (and, under the facts assumed by the supreme court, no rate for the services in question had been filed and approved by the PSC) and the actual charges. Similarly, in this case the refund is not based on a determination that the new access rates were not reasonable: the PSC expressly made clear that issue was still to be decided if Kendall filed an application for an increase. Rather, the refund is based on the difference between the properly filed access rates and the rates actually charged.

¶ 39. Our reading of *GTE North* is consistent with *Wisconsin Power & Light's* reference to it.

> Under the filed rate doctrine, codified in sec. 196.22, Stats, a utility must charge the rate that it files with the commission and that the commission approves. If a utility charges its customers a higher rate, the PSC may order the utility to refund its excess revenue. *See GTE North*, 176 Wis. 2d at 570.

*Wisconsin Power & Light Co.* at 396.

¶ 40. In summary, we are persuaded that the prohibition in Wis. Stat. § 196.37(1) against retroactive ratemaking does not apply in this case because the PSC was not exercising its ratemaking authority. It was not deciding whether the increased access rates were reasonable, but was deciding whether Kendall had complied with the statutory procedural requirements for increasing rates. Its refund order was a remedy for the failure to comply with those statutory requirements, not a remedy for charging unreasonable rates for services already provided. However, this does not end our inquiry, because the PSC may not order the refund it did without statutory authority. *See GTE North Inc.,* 176 Wis. 2d at 564. Therefore, the final question is whether the PSC had the authority to order the refund, even though it does not constitute prohibited retroactive ratemaking.

*PSC's Authority Under Wis. Stat. § 196.37(2)*

██

¶ 41. The PSC contends it has the authority to order the refund under *GTE North,* whereas Kendall contends that *GTE North* is inapposite. As we have described above, the court in *GTE North* concluded that the utility had violated the filed-rate statute, that Wis. Stat. § 196.37(2) authorized a refund order of the charges that were not properly filed, and that public policy was served by allowing a refund order to strictly enforce the filed-rate statute. Kendall argues that *GTE North* is factually distinguishable because in *GTE North* the utility did not file any schedule for the service in question, whereas Kendall did file its new rates with the PSC. As we have pointed out above, the utility apparently contended that it had filed a schedule for the

service in question, but the PSC did not agree. Moreover, we have affirmed the PSC's conclusion that Kendall violated the filed-rate statute, WIS. STAT. § 196.22. We therefore move on to the question whether § 196.37(2) authorizes the PSC to order a refund based on the violation of WIS. STAT. §§ 196.20(2m) and 196.22 in this case.

¶ 42. We conclude the plain language of WIS. STAT. § 196.37(2) is broad enough to authorize the refund order in this case. The PSC determined Kendall's "act" of increasing rates was "unlawful"—a violation of WIS. STAT. §§ 196.20(2m) and 196.22. The court in *GTE North* concluded that the "in the future" language in § 196.37(2) was not a limitation on the PSC's authority to order a refund in that case, and that the refund order was authorized because it was "a just and reasonable order regarding a 'measurement, regulation, act, practice, or service.'" *GTE North Inc.*, 176 Wis. 2d at 567. We see no basis on which to conclude that the refund order in this case is not also authorized by § 196.37(2). Given the desirability of strict enforcement of the filed-rate statute, which the court in *GTE North* recognized, we see no significant difference between charging a rate that the utility believes is included in a tariff but the PSC concludes is not, as in *GTE North,* and charging a rate that the utility believes was properly filed with the PSC but the PSC concludes was not. In both cases a refund furthers the purposes of the filed-rate statute; it also furthers the purposes of public participation and PSC scrutiny before rate increases as expressed in § 196.20(2m).

¶ 43. Kendall may also be arguing that, even if it did violate the filed-rate statute, and even if the PSC does have the authority to order a refund without violating WIS. STAT. § 196.37(1), it was unjust for the

PSC to do so in this case because the agency had accepted Kendall's new access rates for filing. However, given the findings of the PSC, we conclude the refund order here was just and reasonable. *See GTE North Inc.*, 176 Wis. 2d at 567. The PSC found that Kendall knew its schedules would and did have the effect of increasing rates for the access customers in the nineteen exchanges. In addition, even after being informed by PSC staff in March of 1999 that they believed Kendall's access rate changes required prior PSC approval, Kendall did not initiate that process, but instead insisted the changes were not an increase and therefore it did not need to comply with Wis. Stat. § 196.20(2m). The PSC's order that Kendall should make the affected customers whole is just and reasonable and within the authority conferred by § 196.37(2).

*By the Court.*—Order affirmed.